IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROOS FOODS, | § | |
| | § | No. 160, 2016 |
| Appellant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. S15A-05-002 |
| MAGDALENA GUARDADO, | § | |
| | § | |
| Appellee Below- | § | |
| Appellee. | § | |

Submitted: September 28, 2016
Decided: November 29, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Garrett Baker and Andrew J. Carmine (*argued*), Elzufon, Austin, Tarlov & Mondell, Wilmington, Delaware, for Appellant, Roos Foods.

Walt Schmittinger, Schmittinger and Rodriguez, Dover, Delaware, for Appellee, Magdalena Guardado.

**VAUGHN**, Justice:

This appeal involves an undocumented worker who was injured in a work-related accident and is receiving total disability benefits. The employer petitioned the Industrial Accident Board ("the Board") to terminate those benefits on the ground that the worker is no longer disabled and can return to work. The Board found that the employer met its initial burden of showing that the worker was no longer totally disabled. The Board then found that the worker was a *prima facie* displaced worker based solely on her status as an undocumented worker. The Board next found that the employer had failed to meet its burden of showing regular employment opportunities within the worker's capabilities. Accordingly, it denied the employer's petition. The questions before us are (1) whether an injured worker's immigration status alone renders her a *prima facie* displaced worker and (2) whether the Board properly found that the employer failed to meet its burden of showing regular employment opportunities within the worker's capabilities because its evidence failed to take into account the worker's undocumented status. For the reasons which follow, we have concluded that an undocumented worker's immigration status is not relevant to determining whether she is a *prima facie* displaced worker, but it is a relevant factor to be considered in determining whether she is an actually displaced worker. We have also concluded that the Board correctly rejected the employer's evidence of regular employment opportunities for the worker because that evidence

2

failed to consider her undocumented status.

## FACTS AND PROCEDURAL HISTORY

Magdalena Guardado was employed as a machine manager for Roos Foods when she was involved in a work-related accident on June 22, 2010. She injured her left wrist and thereafter received total disability benefits.

On June 18, 2014, Guardado underwent surgery, consisting of a left wrist fusion performed by Dr. Richard DuShuttle. Shortly after the surgery, Dr. DuShuttle released Guardado to light duty, one-handed work. Her dominant hand is her right hand, which is uninjured. The injury is to the left hand. On November 7, 2014, the employer filed its Petition for Review alleging that the claimant was able to return to work. At the hearing before the Board, Dr. Eric Schwartz, who testified on behalf of the employer, agreed that she could return to one-handed light duty work. He indicated that he believed that she could do desk work or any other type of work that did not require manipulation with both her left and right hand.

The employer also offered the testimony of Ellen Lock, a vocational case manager. Ms. Lock prepared a labor market survey in which she identified eight specific jobs which she believed Guardado could perform, despite the disability to her left hand. These jobs included: two carwash attendant positions; a sorter with Goodwill Industries; two housekeeping positions; a food service worker with a

hospital; and, two fast food crew member positions at McDonald's and Taco Bell. Dr. Schwartz believed that Guardado would have difficulty performing the carwash and housekeeping positions. Ms. Lock conceded that the housekeeping positions would not be suitable for Guardado in light of Dr. Schwartz's testimony, but she maintained that the carwash positions fit within Guardado's qualifications and limitations. Given that Guardado is only supposed to do light-duty work with her right hand and use her left hand as an assist, the proposition that she would be in a position to wash cars all day strikes us as implausible, but if we credit this odd suggestion, the survey identified a total of six jobs that fit within Guardado's restrictions. Most importantly, however, Ms. Lock's labor market survey did not take into account that Guardado was an undocumented worker because that fact was apparently unknown to her.

Dr. DuShuttle, testifying on behalf of Guardado, stated that the impairment to the left hand is permanent, and with that hand Guardado is capable of only simple activities, such as grasping light objects and assisting her right hand.

Guardado also testified before the Board. She was 38 years old at the time of the hearing and had worked for Roos Foods for about five years. That was the only job she had ever held. She testified that she obtained the equivalent of a high school diploma in her native El Salvador. She further confirmed that she does not speak or

4

write English.

Guardado came to the United States in 2004. She is not a U.S. citizen and does not have any resident alien status, green card, or other credentials or documentation that would establish that she is legally able to work in this country. She also testified about having looked for work since having had the surgery performed by Dr. DuShuttle, but not having been able to find a job.

The Board began its analysis by finding that Guardado was no longer totally disabled. It accepted the testimony of the two doctors that she was able to work one-handed light duty jobs, such as some of the jobs listed in the labor market survey. The Board then considered whether she qualified as a displaced worker. It concluded that "Claimant testified that she had only applied to a few jobs; however, she had not heard back from any of those. Based on this little evidence, there is no basis to find 'actual' displacement. The sole issue is whether she should be considered displaced on a *prima facie* basis."[1] It next considered whether she was a *prima facie* displaced worker. Drawing on our case of *Campos v. Daisey Construction Co.*,[2] the Board concluded that it was "satisfied the Claimant qualifies as a displaced worker based upon her undocumented legal status and Employer has failed to present a Labor

[1] *Guardado v. Roos Foods*, I.A.B. Hearing No. 1405006, at 8 (Apr. 7, 2015).
[2] 107 A.3d 570 (Del. 2014).

5

Market Survey that shows regular employment opportunities within Claimant's capabilities as an undocumented injured worker."[3]

The employer appealed the Board's decision to the Superior Court. The Superior Court affirmed, explaining:

> The undisputed testimony before the Board established that Guardado 1) is 38-years-old, 2) is unskilled, 3) only speaks Spanish, 4) has the equivalent of a high school diploma from El Salvador, 5) can only use her right hand for light-duty work and left hand as an "assistance hand," 6) has only worked for five years, and 7) is an undocumented worker unable to work legally in the United States. The Board recited these facts in its written opinion with the primary focus being on the fact Guardado was an undocumented worker. Even without Guardado's undocumented status, the evidence certainly supports the Board's finding that she fits into the *prima facie* displaced category. Guardado is almost middle-aged and has no education beyond high school in El Salvador. Guardado has no real workplace training, very little work experience, does not speak English, is unskilled in the labor market, and has work restrictions that limit her to light-duty work with one hand. These undisputed facts certainly portray a woman disqualified from regular employment in any well-known branch of the competitive labor market. When you add in the fact that she can not work legally in this country, then her difficulties in obtaining work become even greater. There is no doubt that Guardado, with her disabilities and limitations, is going to have a very difficult time finding a job.[4]

---

[3] *Guardado*, I.A.B. Hearing No. 1405006, at 11.
[4] *Roos Foods v. Gurdado*, 2016 WL 355002, at *3 (Del. Super. Jan. 26, 2016).

This appeal followed.

## DISCUSSION

"The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[5] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] "On appeal, this Court will not weigh the evidence, determine questions of credibility, or make its own factual findings."[7] Absent errors of law, which are reviewed *de novo*, we review a Board's decision for abuse of discretion.[8] An abuse of discretion occurs when the decision has "exceeded the bounds of reason in view of the circumstances, [or] so ignored recognized rules of law or practice so as to produce injustice."[9]

Where an employer seeks to terminate a claimant's total disability benefits, the employer must initially show that the claimant is not completely incapacitated.[10] The

---

[5] *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Mar. 24, 2008).
[6] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).
[7] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).
[8] *Id.*
[9] *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994) (quoting *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 570 (Del. 1988)).
[10] *Chrysler Corp. v. Duff*, 314 A.2d 915, 918 n.1 (Del. 1973)

claimant may then rebut that showing by establishing that she is a displaced worker.[11] The definition of a displaced worker is well established, and has been stated as follows:

> The term is used to refer to a worker who, while not completely incapacitated for work, is so handicapped by a compensable injury that [she] will no longer be employed regularly in any well known branch of the competitive labor market and will require a specially-created job if [she] is to be steadily employed.[12]

In deciding whether a worker is a displaced worker, one considers "not only the medical and physical facts but also such factors as the employee's age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment and the availability of such work."[13]

A worker may be a "*prima facie*" displaced worker if the degree of obvious physical impairment, coupled with the other factors just mentioned, makes a *prima facie* case that the worker is displaced.[14] If the evidence does not obviously place the worker in the *prima facie* displaced category, the worker may still show that she is "actually" displaced by showing that she "has made reasonable efforts to secure

---

[11] *Id.*

[12] *Ham v. Chrysler Corp.*, 231 A.2d 258, 261 (Del. 1967).

[13] *Id.*

[14] *Duff*, 314 A.2d at 916.

8

suitable employment which have been unsuccessful because of the injury."[15]  If the employee succeeds in showing that she is a *prima facie* or an actually displaced worker, the burden shifts to the employer "to show availability to the worker, thus 'displaced', of regular employment within [her] capabilties."[16]

In the section of the Board's decision in which it made Findings of Fact and Conclusions of Law, it seems to have based its conclusion that the claimant is a *prima facie* displaced worker entirely upon her status as an undocumented immigrant.  It does take note of the fact that the only place she has worked since coming to the United States is with Roos Foods and that she can neither read nor speak English. But when the Board's analysis is considered as a whole, it seems  apparent that the finding that she is a *prima facie* worker is based entirely upon her undocumented legal status.  The parties have so formed their arguments on appeal.  Roos Foods argues that an undocumented worker is not *per se* a displaced worker.  Guardado argues that the Board properly determined that her undocumented status warranted a finding that she is a *prima facie* displaced worker.

The Board's analysis relies upon our decision in *Campos v. Daisy Construction Company*.[17]  In *Campos*, the Board granted an employer's petition to terminate the

---

[15]  *Id.* at 917.
[16]  *Id.*
[17]  107 A.3d 570 (Del. 2014).

claimant's total disability benefits, "reasoning that Campos was no longer totally disabled because he was physically capable of working and therefore was not displaced from the workforce."[18] On appeal, Campos did not challenge the Board's termination of his total disability benefits and did not claim to be a displaced worker.[19] The displaced worker doctrine was not before the Court in *Campos* and was not considered by the Court.[20] *Campos* was a partial disability case, where the issue on appeal centered on the employer's burden "to prove that Campos had no decrease in earning power following the workplace injury in order to avoid owing Campos partial disability payments."[21] Thus, *Campos* is not dispositive of the issue before us.

Whether a person is a *prima facie* displaced worker is based upon an individualized examination of the factors set forth above.[22] Although two cases may appear to be analogous, one case is not determinative of the other.[23] Adding a worker's undocumented status to those factors would tend to create a class of injured

---

[18] *Id.* at 573.
[19] *Id.* at 574.
[20] *See id.*
[21] *Id.* at 575.
[22] *See Duff*, 314 A.2d at 916-17.
[23] *See id* at 917. "It seems to us that, given the great variety of factual situations, it is unwise to focus solely on one factor as necessarily decisive on the burden of proof. Both the employer and the employee share a mutual duty to obtain employment for the employee, the precise extent of which cannot be clearly and definitively expressed as a general rule." *Id.*

general laborers, undocumented workers, who would be deemed *prima facie* displaced as a matter of law based on immigration status. We believe that this would be a misapplication of the *prima facie* displaced worker concept. Determining whether an injured claimant is a *prima facie* displaced worker should continue to be an individualized determination based upon the factors recognized by the case law, which are the degree of obvious physical impairment, "the employee's age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment and the availability of such work."[24] We find that a worker's legal status as an undocumented worker is not relevant to determining whether the worker is *prima facie* displaced.

*Campos* does, however, have a bearing on the employer's burden of showing that there are regular employment opportunities within the claimant's capabilities, when the employer has that burden. As we discussed in *Campos*, "the worker must be taken as he was hired," and "the employer who seeks to terminate benefits also bears the burden to prove that jobs are actually available – *i.e.*, 'within the reach' – of the injured employee."[25] The employer in *Campos* argued that it had a job for Campos if he could prove legal status.[26] We observed that the employer's offer was

---

[24] *Ham*, 231 A.2d at 261.
[25] 107 A.3d at 575, 577.
[26] *Id.* at 572.

11

not a bona fide offer because Campos was not, in fact, legally within this country.[27]

After *Campos,* where the employer has the burden of establishing that jobs are actually available to a claimant, that burden must take into account the claimant's undocumented status.[28]

As discussed above, where a claimant is successful in showing that she is a displaced worker, either *prima facie* or actually, the burden shifts to the employer to show availability to the worker of regular employment within the worker's capabilities.[29] *Campos'* requirement that the worker's undocumented status be taken into account in deciding whether the employer has met its burden of showing that jobs are actually available to the worker, applied in a partial disability case there,[30] applies with equal force in a total disability case. Where the claimant in a total disability termination case succeeds in showing that she is a displaced worker, the employer must take the worker as she was hired, and the employer must then prove that jobs are actually available, *i.e.* within the reach of the injured employee, with the injured employee's undocumented status being taken into account as a factor. It follows that where an injured claimant attempts to show that she is an actually

---

[27] *Id.* at 576.
[28] *Id.* at 572.
[29] *Duff*, 314 A.2d at 916-17.
[30] 107 A.3d at 572.

displaced worker because reasonable efforts to secure suitable employment have been unsuccessful, her status as an undocumented worker should be taken into account as a factor in determining whether she has made reasonable, but unsuccessful, efforts to secure suitable employment.

In its oral argument, the employer argues that it is impossible to present evidence that an undocumented worker can obtain employment because that would require presenting affidavits from employers willing to say that they flout the law and knowingly employ undocumented workers. Although we understand this fear, we do not believe it is warranted. The uncomfortable reality that gives rise to societal debate is that there are large numbers of undocumented workers in our midst.[31] Using reliable social sciences methods, there should be no barrier to employers in presenting evidence regarding the prevalence of undocumented workers in certain types of jobs in certain regions, and combining that with more specific information about actual jobs in those categories.[32] So long as the evidence meets the useful tests of reliability

---

[31] JEFFREY S. PASSEL & D'VERA COHN, PEW RESEARCH CTR.'S HISPANIC TRENDS PROJECT, UNAUTHORIZED IMMIGRANT TOTALS RISE IN 7 STATES, FALL IN 14: DECLINE IN THOSE FROM MEXICO FUELS MOST STATE DECREASES, 29 tbl.A3 (2014) http://www.pewhispanic.org/files/2014/11/2014-11-18_unauthorized-immigration.pdf. In 2012, there were 8.1 million undocumented immigrants working or looking for work in the U.S., comprising 5.1% of the nation's labor force. *Id.* In Delaware, there were 20,000 undocumented immigrants working or looking for work, totaling 3.8% of the state's labor force. *Id.*

[32] JEFFREY S. PASSEL & D'VERA COHN, PEW RESEARCH CTR, IMMIGRANT WORKERS IN PRODUCTION, CONSTRUCTION JOBS FALLS SINCE 2007: IN STATES, HOSPITALITY, MANUFACTURING AND CONSTRUCTION ARE TOP INDUSTRIES, (2015) http://www.pewhispanic.org/files/2015/03/2015-03-26_unauthorized-immigrants-passel-testimony_REPORT.pdf. For example, using data collected

and relevancy,[33] the Board has to give it weight in making the ultimate determination whether an injured worker has employment available to her. Roos Food's argument that there are many employers now facing claims from undocumented workers they employed underscores the reality that employers can present market evidence regarding employment of undocumented workers in specific categories within the specific geographic areas. Nothing in *Campos*,[34] *Ramirez*,[35] or the decision of the Superior Court in this case suggests that employers must present affidavits from employers confessing to their willingness to knowingly violate the law by employing undocumented workers. And although the Board's decision has some language that

---

from the Census Bureau's American Community Survey and Current Population Survey, a Pew Research Center study outlined the top occupations for undocumented workers in Delaware, and found that 44% of the undocumented labor force was employed in the service industry, 13% in construction, and 10% in transportation. *Id.* at 16 tbl.A1. The study also determined the occupations with the highest shares of undocumented workers in Delaware, and found that 33% of workers in farming were undocumented, 10% in construction, and 8% in the service industry. *Id.* at 18 tbl.A2. Using this type of data, employers can map job openings in their region against the prevalence of undocumented workers in that region by sector.

[33] *See Tumlinson v. Advanced Micro Devices, Inc.*, 81 A.3d 1264, 1268 (Del. 2013) (explaining that "the trial court must act as a gatekeeper to determine whether the expert opinion testimony is both (i) relevant and (ii) reliable" (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999))); *M.G. Bancorporation v. Le Beau*, 737 A.2d 513, 521 (Del. 1999) (stating expert testimony must be "not only relevant, but reliable" (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594–95 (1993))); *see also* D.R.E 702 ("If scientific, technical or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of *reliable* principles and methods, and (3) the witness has applied the principles and methods *reliably* to the facts of the case.") (emphasis added).

[34] *Campos*, 107 A.3d at 570.

[35] *Delaware Valley Field Servs. v. Ramirez*, 105 A.3d 396 (Del. Super. 2012), *aff'd sub nom. Delaware Valley Field Servs. v. Melgar-Ramirez*, 61 A.3d 617 (Del. 2013).

can be read as hinting toward a requirement that an employer demonstrate that specific employers exist who hire undocumented workers and have jobs within the claimant's ability that are open,[36] we clarify that no such requirement exists. Rather, what is required is that an employer who has a burden of showing that jobs are actually available for an undocumented worker address that reality by presenting reliable market evidence that employment within the worker's capabilities is available to undocumented workers. That burden is not an unreasonable one for employers to bear, particularly when they hired an undocumented worker in the first place.

## CONCLUSION

A claimant's status as an undocumented worker is not relevant to a determination of whether the claimant is a *prima facie* displaced worker. Where a claimant who is an undocumented worker seeks to show that she is an actually displaced worker, her status as an undocumented worker is a factor to be considered by the Board in deciding whether she has made reasonable efforts to secure suitable employment which have been unsuccessful. If a claimant is successful in establishing that she is a displaced worker, the employer's burden of showing availability to the claimant of regular employment within her capabilities must take into account her

---

[36] *See Guardado*, I.A.B. Hearing No. 1405006, at 11 ("Because Ms. Lock was unaware of Claimant's undocumented legal status when she prepared the survey, the jobs on the Labor Market Survey cannot be considered reliable evidence of jobs that are actually 'within reach' to Claimant . . . .").

status as an undocumented worker.  Since we have concluded that the Board's finding that the claimant is a *prima facie* displaced worker on the basis of her undocumented status alone is legal error, the judgment of the Superior Court is reversed and the matter is remanded to the Superior Court with instructions that it remand the matter to the Board for a rehearing.