SUPERIOR COURT
OF THE
STATE OF DELAWARE

**RICHARD F. STOKES**
*JUDGE*

**SUSSEX COUNTY COURTHOUSE**
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

February 7, 2018

Walt F. Schmittinger, Esq.
Schmittinger & Rodriguez, P.A.
414 S. State Street
P.O. Box 497
Dover, Delaware 19903

Andrew J. Carmine, Esq.
Elzufon Austin & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899

RE: *Magdalena Guardado v. Roos Foods, Inc.*,
C.A. No.: S17A-05-003 RFS

Dear Counsel:

This is my decision on Magdalena Guardado's ("Guardado") appeal of the Industrial Accident Board's decision terminating her total disability benefits.[1] Guardado was employed by Roos Foods, Inc. ("Roos Foods") for approximately five years. During that time Guardado was employed as a machine manager. On June 22, 2010, Guardado was involved in a work-related accident. Guardado injured her left wrist when she slipped on the floor. Guardado was out of work until the summer of 2013 when she was placed on total disability. On June 18, 2014,

---

[1] The Board also denied Guardado's claim for partial disability benefits, attorney's fees, and medical witness fees. Claimant does not contest in her brief the denial of the partial disability benefits, attorney's fees, or medical witness fees. As such, they will not be addressed.

1

Guardado underwent surgery, consisting of a left wrist fusion performed by Dr. Richard DuShuttle. Dr. Dushuttle released Guardado to light-duty, one-handed work on August 7, 2014.

Roos Food filed a Petition for Termination of Benefits on November 7, 2014, arguing that Guardado was no longer totally disabled and was physically able to return to work. The Board held a hearing on March 24, 2015. Dr. Eric Schwartz, who testified on behalf of the employer, agreed that Guardado could return to work in a one-handed light duty capacity. Roos Food also offered the testimony of Ellen Lock, a vocational case manager. Ms. Lock prepared a labor market survey in which she identified eight specific jobs which she believed Guardado could perform. Lock was aware of Guardado's job history, her inability to speak English, educational history, and her physical limitations with her left hand. Lock was not aware of Guardado's legal inability to work in the United States. Lock acknowledged that two of the jobs in the labor market survey were probably not suitable for Guardado due to her physical limitations.

Dr. DuShuttle, who testified on behalf of Guardado, stated that the impairment to the left hand is permanent. Dr. DuShuttle believes that Guardado's use of her left hand is only good for simple activities, such as grasping light objects and assisting her right hand.

Guardado testified before the Board. Guardado was 38 years old at the time of the first hearing. She was born in El Salvador and came to the United States in 2004. Guardado's work history was limited to her job with Roos Food. She testified that she obtained the equivalent of a high school diploma in her native El Salvador. Guardado further testified that she does not speak or write English.

The Board denied Roos Foods' Petition for Termination of Benefits in a decision dated April 7, 2015, concluding that Guardado was a *prima facie* displaced worker and that Roos Foods

2

had not shown that there was work available for Guardado given her capabilities and limitations.[2] Roos Foods appealed the April 7, 2015 Board decision to this Court. This Court affirmed the Board's decision reasoning that 1) Guardado was medically able to work with restrictions, 2) was a *prima facie* displaced worker, and 3) Roos Foods did not establish that work was available to Guardado within her restrictions and qualifications was based upon substantial evidence and free from legal error.[3] Roos Foods then appealed to the Delaware Supreme Court.

On November 29, 2016, the Supreme Court of Delaware issued its opinion reversing and remanding the judgment of the Superior Court.[4] The Supreme Court addressed two questions on appeal; first, whether an injured worker's immigration status alone renders her a *prima facie* displaced worker, and second, whether the Board properly found that the employer failed to meet its burden of showing regular employment opportunities within the worker's capabilities because its evidence failed to take into account the worker's undocumented status. The Supreme Court held that a claimant's status as an undocumented worker is not relevant to a determination of whether the claimant is a *prima facie* displaced worker, but can be used as a factor when the claimant seeks to show that she is an actually displaced worker.[5] The Supreme Court also held that if the claimant is successful in establishing that she is a displaced worker, the employer's burden of showing availability to the claimant of regular employment within her capabilities must take into account her status as an undocumented worker.[6] The Supreme Court found that Board's finding that the claimant was a *prima facie* displaced worker on the basis of her undocumented

---

[2] *Guardado v. Roos Foods*, I.A.B. Hearing No. 1405006 (April 7, 2015).
[3] *Roos Food v. Guardado*, 2016 WL 355002 (Del. Super. Jan. 26, 2016).
[4] *Roos Foods v. Guardado*, 152 A.3d 114 (Del. 2016).
[5] *Id.* at 122.
[6] *Id.*

3

status alone constituted legal error.[7]  As such, the Supreme Court reversed the judgment of the Board and remanded the matter back to this Court with instructions that it remand the matter back to the Board for a rehearing.

## The Remand Hearing

A hearing on remand before the Board was held on April 27, 2017.  Pursuant to 19 *Del. C.* § 2348(f), the Board considered all evidence that was presented at the original hearing in addition to any new evidence and legal arguments the parties decided to make.  The parties stipulated that Guardado's average weekly wage at the time of the injury was $306.00 per week, with a compensation rate of $204.00 per week.  The parties further stipulated that the medical testimony from the original hearing, and the Board's findings regarding Guardado's medical/physical ability to work, remained unchanged from the prior hearing.  No new medical evidence was presented at the remand hearing.  Three witnesses testified at the remand hearing.

Dr. Desmond Toohey testified on behalf of Roos Foods.  Dr. Toohey is an Assistant Professor of Economics at the University of Delaware.  Dr. Toohey testified that his primary fields of research were in labor economics and economic demography.[8]  In preparation for the hearing, Dr. Toohey prepared a report regarding jobs that exist in Delaware for undocumented workers. The report was titled "The Distribution of Unauthorized Immigrants Across Jobs in the Delaware Labor Market".  In preparing his report, Dr. Toohey reviewed the two studies cited by the Supreme Court in its decision[9] and then performed an independent analysis.  In performing his analysis, Dr.

---

[7] *Id.*

[8]  Dr. Toohey testified that "labor economics in general is the study of labor markets and how workers and employers interact, how they sort into jobs, how they find, lose jobs and how education maps into finding employment for workers.  And then economic demography is the study of populations, migration, aging, mortality, anything about that sort of how groups of people interact, move and live." *Guardado v. Roos Foods*, I.A.B. Hearing No. 1405006, at 15 (April 27, 2017) (Transcript).

[9] *Roos Foods v. Guardado*, 152 A.3d 114, 121-122 (Del. 2016).

4

Toohey 1) attempted to establish roughly how many undocumented immigrants are in Delaware and then 2) figure out if they are employed and in what kinds of jobs they are employed. Dr. Toohey also acknowledged that there are inherent weaknesses in trying to determine the exact number of undocumented workers in the State. Dr. Toohey estimated that there are approximately 11.8 million unauthorized immigrants in the United States and roughly 28,000 undocumented immigrants in the State of Delaware.[10] Dr. Toohey estimated that there are between 20,000 and 25,000 unauthorized immigrants working in Delaware.[11]

In evaluating the specific jobs listed in the labor market survey, Dr.Toohey looked at the occupation and the industry that were represented. For each of the jobs listed on the labor market survey, Dr. Toohey determined the number of unauthorized immigrants working in the corresponding occupation, as well as the corresponding industry.[12] Table I of Dr. Toohey's report indicates that the following occupations have the following distribution of unauthorized immigrants: management, business, science and arts has 4,000; service has 5,000; sales and office has 1,000; natural resources, construction, and maintenance has 4,000; and, production, transportation, and material moving has 8,000.[13] Table II of Dr. Toohey's report indicates that the listed industries have the following distribution of unauthorized immigrants: construction has 4,000; manufacturing has 5,000; retail trade has 4,000; finance, insurance, real estate, rental, and leasing has less than 1,000; professional, scientific, management, administrative, and waste

---

[10] Dr. Toohey's Report at 5.
[11] Dr. Toohey's Report at 2.
[12] According to Dr. Toohey's report, "occupation describes the tasks performed by an employee in the completion of the job and industry describes the business in which the employer operates." Dr. Toohey's Report at 8.
[13] Dr. Toohey's Report at 14.

management has 2,000; educational services, health care, and social assistance has 2,000; and, arts, entertainment, recreation, accommodation, and food services has 4,000.

Dr. Toohey reviewed each of the jobs listed in the labor market survey prepared by Ellen Lock, compared those jobs to his research, and determined the number of unauthorized immigrants who worked in the corresponding occupations and industries. For example, the clerk position at El Mercadito Convenience Store listed in the labor market survey involved waiting on customers, working a cash register, stocking shelves, and performing cleaning duties.[14] Dr. Toohey found that these tasks were all part of the "sales and office" occupation category which employs approximately 1,000 unauthorized immigrants in Delaware.[15] As a convenience store, it is located in the retail trade industry which employs approximately 4,000 unauthorized immigrants in Delaware. Dr. Toohey then performed a similar analysis on the remaining jobs in the labor market survey.[16] Based upon his research and analysis, Dr. Toohey concluded that there are thousands of undocumented immigrants employed in Delaware in each of the occupations and industries corresponding to the jobs listed in the labor market survey.[17] Dr. Toohey found the unauthorized immigrant population to be well-represented in the labor market survey.[18]

On cross-examination, Dr. Toohey acknowledged that the margin of error in his estimated numbers is difficult to ascertain but could be as high as twenty percent. Even with this high margin of error, Dr. Toohey testified that he is still certain that there are thousands of jobs available in each of the occupation and industry categories. Dr. Toohey also did not correlate workers with

---

[14] Dr. Toohey's Report at 9.
[15] *Id.*
[16] *Id.*
[17] Dr. Toohey's Report at 12.
[18] *Id.*

6

disabilities in his studies. Dr. Toohey did acknowledge that many of his numbers included undocumented workers that are fluent in the English language. Dr. Toohey expressed no opinion about Guardado in particular and her prospects of being employed.

Ellen Lock, a vocational case manager employed by Coventry, testified on behalf of Roos Foods. Lock performed a new labor market survey. Lock testified that the survey was a representative sample of positions available to Guardado. Lock testified that she was aware of Guardado's educational history, work history, her inability to read or write the English language, that she was 38 years old at the time of the first labor market survey, and her physical limitations. Lock identified 17 potential positions in the job market where Guardado would not have to communicate in the English language, positions that were entry level in nature, that do not require previous vocational experience, and that were physically appropriate. Lock personally viewed each of the jobs listed in the labor market survey. Lock discussed with prospective employers Guardado's physical limitations and her inability to communicate in the English language. Lock believes that the need for Spanish speaking employees has risen over the years. Lock testified that she is confident that Guardado could find work within her physical restrictions and vocational qualifications.

Lock is aware that Guardado conducted a job search of her own, which included six of the seventeen jobs in the labor market survey. Guardado presented documentation to Lock that indicated that she applied to six jobs on February 13, 2017, and five jobs in the month of April. Lock testified that she is not aware of whether or not those employers had specifically responded to Guardado. Lock testified that as a rule of thumb, she likes to see people apply to ten jobs per week on average. Based upon the jobs listed in the labor market survey, Lock concluded that Guardado has an average earning capacity of $330.00 per week.

7

Lock testified that the restaurant jobs she found available deal with large quantities of food and agreed Guardado might be at a disadvantage in that environment relative to other non-restricted employees. Lock testified that some of the housekeeping positions require the use of a broom or a mop and Guardado would need both hands to perform that task. Lock suggested Guardado could use her non-dominant hand to assist her as a guide even though Dr. Schwartz rejected that idea in the previous labor market survey. Lock stated that even though Guardado might be at a disadvantage, the employers she spoke with were willing to hire her even with her limitations. Lock did not discuss Guardado's undocumented status with any of the employers. Lock testified that she believed 30 minutes was a reasonable amount of time spent commuting to work. Three of the jobs Lock identified in her survey were located in Pennsylvania and over one hour away. Lock identified the jobs for the labor market survey during the months of January, February and March 2017. At the time of the hearing, Lock testified that eight of the 17 jobs were still available. Lock acknowledged that employers are more willing to hire someone with experience than without experience.

Guardado is 40 years old. She was born in El Salvador and came to the United States in 2004. Guardado earned the equivalent of a high school degree in El Salvador, but has no other skills or training. Guardado testified that she is starting to learn how to use a computer. Guardado's work history consists of the five years she spent at Roos Foods. Guardado only speaks Spanish, but testified that she has started going to school two nights a week in order to learn English. Guardado is not able to legally work in the United States. Guardado testified that there has been no change in her medical restrictions although she started wearing a brace on her left wrist. At the time of the hearing, Guardado testified that she is only taking ibuprofen for pain. Guardado testified that she has reviewed the labor market survey and has looked for employment

8

within her medical restrictions. Guardado has only applied to restaurant jobs. Guardado stated she has not heard back from any of the jobs to which she applied but that she wants to work.

## THE REMAND DECISION

The Board issued its decision on May 18, 2017, granting Roos Foods' Petition for Review. In finding that Guardado was no longer entitled to total disability benefits the Board found 1) Guardado was physically capable of working, 2) that she was a *prima facie* displaced worker, and 3) Roos Foods successfully established the availability of jobs within Guardado's capabilities. The Board also did not award partial disability benefits, attorney's fees, or medical witness fees. Guardado now appeals the Board's decision to this Court alleging that its finding that Roos Foods successfully established the availability of jobs within her capabilities and restrictions was not based upon substantial evidence or free from legal error. I have concluded that the Board's decision is supported by substantial evidence and free from legal error.

## STANDARD OF REVIEW

The Supreme Court and this Court repeatedly have emphasized the limited appellate review of the factual findings of an administrative agency. The function of the Superior Court on appeal from a decision of the Industrial Accident Board is to determine whether the agency's decision is supported by substantial evidence and whether the agency made and errors of law.[19] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[20] The appellate court does not weigh the evidence, determine questions of

---

[19] *General Motors v. McNemar*, 202A.2d 803, 805 (Del. 1964); *General Motors v. Freeman*, 164 A.2d 686 (Del. 1960).
[20] *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994); *Battista v. Chrysler Corp.*, 517 A.2d 295, 297 (Del. Super. 1986), *app. dism.*, 515 A.2d 397 (Del. 1986)(Table).

9

credibility, or make its own factual findings.[21] It merely determines if the evidence is legally adequate to support the agency's factual findings.[22] We review errors of law *de novo*.[23] Absent errors of law, the Board's decision will not be disturbed where there is substantial evidence to support its conclusions.[24]

## DISCUSSION

Guardado alleges that Board erred in terminating her total disability benefits because the evidence submitted does not establish the availability of work for her within her capabilities and restrictions. In a total disability case, the employer is initially required to show that the claimant is not totally incapacitated (i.e., demonstrate "medical employability").[25] The claimant is then required to rebut that showing, by showing that he or she is a *prima facie* displaced worker, or submit evidence of reasonable, yet unsuccessful, efforts to secure employment which have been unsuccessful because of the injury (i.e., actual displacement").[26] As a rebuttal, the employer may then present evidence showing that there are regular employment opportunities within the claimant's capabilities.[27]

The Workers' Compensation Act provides that employees who have suffered a loss in earning power following a workplace injury are entitled to benefits, and this inquiry requires consideration of the employee's individual circumstances. The Board made three findings in reaching its decision granting Roos Foods' Petition for Review. First, the Board found that Roos Foods met its initial burden that Guardado was medically employable. Second, the Board found

---

[21] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[22] 29 *Del. C.* § 10142(d).
[23] *Person-Gaines v. Pepco Holdings Inc.*, 981 A.2d 1159, 1161 (Del. 2009).
[24] *Dallachiesa v. General Motors Corp.*, 140 A.2d 137 (Del. Super. 1958).
[25] *Howell v. Supermarkets General Corp.*, 340 A.2d 833, 835 (Del. 1975).
[26] *Id.*
[27] *Id.*

10

that Guardado rebutted that presumption by showing that she was *prima facie* displaced based upon her individual circumstances. Third, the Board found that Roos Foods presented enough evidence showing that there were regular employment opportunities within Guardado's capabilities and limitations. Guardado argues that Board erred in finding that there were regular employment opportunities available to her within her capabilities and limitations.

### I. Medically Employable

The Board's finding that Guardado is medically employable is based upon substantial evidence and free from legal error. The parties stipulated that Guardado is physically capable of returning to work with restrictions. The parties further stipulated that Guardado's medical and physical ability to work remains unchanged from the original hearing. This evidence is uncontradicted and clearly established that Guardado is medically employable.

### II. Displaced Worker

The Board's finding that Guardado is a *prima facie* displaced worker is based upon substantial evidence and free from legal error. "A worker is displaced if she is so handicapped by a compensable injury that [s]he will no longer by employed regularly in any well known branch of the competitive labor market and will require a specially-created job if [s]he is to be steadily employed."[28] An injured worker can be considered displaced either on a *prima facie* basis or through showing "actual" displacement.[29] The critical elements to be considered in finding *prima facie* displacement are a person's age, mental capacity, education, and training.[30] Under normal

---

[28] *Torres v. Allen Family Foods*, 672 A.2d 26, 30 (Del. 1996) citing *Ham v. Chrysler Corp.*, 231 A.2d 258, 261 (Del. 1967).
[29] Because the Board found that Guardado was *prima facie* displaced, it did not need to make a finding on actual displacement, however, it stated that if Claimant was not *prima facie* displaced, the evidence presented would have been insufficient to warrant a finding of actual displacement.
[30] *Chrysler Corp., v. Duff*, 314 A.2d 915, 916 (Del. 1973).

11

circumstances, to qualify as a *prima facie* displaced worker, one must have only worked as an unskilled laborer in the general labor field.[31]

The undisputed testimony before the Board established that Guardado is 1) 40 years-old, 2) unskilled, 3) only speaks Spanish, 4) has the equivalent of a high school degree from El Salvador, 5) can only use her right hand for light-duty work and her left hand as an "assistance hand," 6) wears a brace on her left hand, 7) has only worked for five years, 8) started taking English classes but does not speak it yet, and 9) learned to use a smartphone but is still learning to use a computer. Guardado's job at Roos Foods was classified as an unskilled job in production assembly. The Board recited all of these facts in its written opinion concluding that based upon her limited education and minimal work experience as an unskilled laborer with a one hand work restriction, Guardado continues to be a *prima facie* displaced worker. The evidence certainly supports the Board's finding that Guardado is a *prima facie* displaced worker. The Board's finding that Guardado was a *prima facie* displaced worker is based upon substantial evidence and free from legal error.

### III.    Availability of Regular Employment

The Board's finding that Roos Food successfully demonstrated the availability of jobs within Guardado's work capabilities is based upon substantial evidence and free from legal error. "If the employee succeeds in showing that she is a *prima facie* or an actually displaced worker, the burden shifts to the employer "to show availability to the worker, thus 'displaced", of regular employment within [her] capabilities.""[32] As the Superior Court stated in *Abex*, "Common sense and everyday experience tells us that a person with given physical disabilities may be physically

---

[31] *See Vasquez v. Abex Corp.*, 618 A.2d 91 (Del. 1992)(Table), 1992 WL 397454, at *2 (Del. Nov. 5, 1992).
[32] *Roos Foods v. Guardado*, 152 A.3d 114, 119 (Del. 2016).

capable of performing certain 'available' work, but because of [her] disability may be unacceptable to an employer and thus unable to secure such work... jobs must be realistically "within reach" of the disabled person...a showing of physical ability to perform certain appropriate jobs and general availability of such jobs is... an insufficient showing of the availability of said jobs to a particular claimant." "If a claimant is successful in establishing that she is a displaced worker, the employer's burden of showing availability to the claimant of regular employment within her capabilities must take into account her status as an undocumented worker."[33]

On appeal, the Supreme Court was presented with an issue of first impression: whether an employer can meet its burden of proof that work is available to an undocumented worker and what constitutes sufficient evidence to satisfy that burden. The Supreme Court recognized the obvious challenges of gathering evidence on the existence of work available to undocumented workers. The Supreme Court held that "using reliable social sciences methods, there should be no barrier to employers in presenting evidence regarding the prevalence of undocumented workers in certain types of jobs in certain regions, and combining that with more specific information about actual jobs in those categories."[34] "So long as the evidence meets the useful tests of reliability and relevancy, the Board has to give it weight in making the ultimate determination whether an injured worker has employment available to her."[35] Nothing in "the decision of the Superior Court in this case suggests that employers must present affidavits from employers confessing to their willingness to knowingly violate the law by employing undocumented workers."[36] "Rather, what is required is that an employer who has the burden of showing that jobs are actually available for

---

[33] *Roos Foods v. Guardado*, 152 A.3d 114, 122 (Del. 2016).
[34] *Id.* at 121.
[35] *Id.* at 121-22.
[36] *Id.* at 122.

13

an undocumented worker address that reality by presenting reliable market evidence that employment within the worker's capabilities is available to undocumented workers."[37]

In order to meet its burden, Roos Foods must demonstrate to the Board 1) the availability of jobs available to Guardado and 2) the jobs are within the categories of occupations and industries employing undocumented workers in Delaware. To meet the first element, Roos Foods presented the testimony of Lock. Lock presented an updated labor market survey to the Board which outlined 17 prospective jobs within Guardado's work capabilities and physical restrictions. The jobs outlined by the survey included working as a clerk/cashier in a convenience store, kitchen preparatory work, a picker on a mushroom farm, and cleaning services. The prospective jobs covered several different industries. Lock indicated that the jobs on the labor market survey were entry level positions that did not require work experience. Lock was aware of Guardado's job history, her inability to speak English, educational history, and her physical limitations. Lock was also aware of Guardado's undocumented worker status. Lock testified that she had discussed Guardado's work restrictions with the prospective employers and believed that Guardado could perform the jobs listed in the labor market survey. Lock stated that she did not discuss Guardado's undocumented status with the prospective employers. The Board agreed with the decision of Lock to not inform prospective employers about Guardado's undocumented worker status because it would be unrealistic to have employers admit that they may illegally hire undocumented workers. The Board found the updated labor market survey provided reliable and sufficient information regarding actual jobs that were available to Guardado within her capabilities and limitations.

---

[37] *Id.*

14

Roos Foods must also demonstrate the jobs are within the categories of occupations and industries employing undocumented workers in Delaware. In order to meets its burden, Roos Food presented the testimony of Dr. Toohey. Dr. Toohey provided a report he authored, dated March 27, 2017, and titled *The Distribution of Unauthorized Immigrants Across Jobs in the Delaware Labor Market*. This report presented evidence indicating that there are thousands of jobs available in each of the occupations and industries that are available for undocumented workers in Delaware. For example, Dr. Toohey's research established that there are approximately 5,000 undocumented workers in service occupations in Delaware 4,000 undocumented workers in the retail trade industry, and 4,000 undocumented workers in the construction industry. The Board found that Roos Foods, through the testimony of Dr. Toohey, provided reliable and relevant evidence on the prevalence of undocumented workers in Delaware in the specific occupations and industries listed on the labor market survey.

Combining the labor market survey by Lock and the testimony of Dr. Toohey, the Board held that Roos Foods was successful in establishing the appropriate nexus between actual jobs available on the labor market survey and the prevalence of undocumented workers in those job categories in Delaware. Therefore, the Board found that Roos Foods had successfully rebutted Guardado's showing that she was a *prima facie* displaced worker. As a result, the Board terminated Guardado's total disability status.

The Board's decision to terminate Guardado's total disability benefits is based upon substantial evidence and free from legal error. The Supreme Court's decision in this case provided the framework for the Board to review the evidence presented by Roos Foods.[38] While Roos Foods

---

[38] *Roos Foods v. Guardado*, 152 A.3d 114 (Del. 2016).

15

was not required to present affidavits from employers showing that they were willing to violate the law and hire undocumented workers, they had to "present reliable market evidence that employment within the worker's capabilities is available to undocumented workers."[39] Lock presented testimony that jobs were available for Guardado within her capabilities and limitations. Lock presented jobs in different areas of the labor market. At the time of the remand hearing, eight of the jobs were still available. Dr. Toohey presented statistical evidence that showed that undocumented workers are employed throughout Delaware in occupations and industries that appeared in the labor market survey. Roos Foods has complied with the Supreme Court's directives on presenting "reliable market evidence that employment within the worker's capabilities is available to undocumented workers."[40]

## CONCLUSION

The Board's finding that 1) Guardado was medically able to work with restrictions, 2) was a *prima facie* displaced worker, and 3) Roos Foods successfully established work was available to Guardado within her restrictions and qualifications is based upon substantial evidence and free from legal error.[41]

The Industrial Accident Board's Decision is **AFFIRMED**.

**IT IS SO ORDERED.**

---

[39] *Id.* at 122.

[40] *Id.* at 122.

[41] The Board found it necessary to state that even though they found Guardado was a *prima facie* displaced worker, she would not have qualified as actually displaced. The Board noted that Guardado applied for eleven jobs, four of which were part of the labor market survey over the course of February, March, and April 2017. All of the jobs Guardado applied to were part of the restaurant industry. The Board found this job search to be minimal and unnecessarily restricted to one industry. If the Board did not find Guardado *prima facie* displaced, they noted the evidence would not have supported a finding of actual displacement. This Court agrees with the Board.

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office