# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KAREN SHAFFER, )
)
)
Employee-Appellant, )
)
v. ) C.A. No: S23A-03-003 MHC
)
ALLEN HARIM FOODS LLC, )
)
)
)
)
Employer-Appellee. )

## ORDER

Submitted: June 5, 2023
Decided: August 29, 2023

*Upon Consideration of an Appeal of the Decision of the Industrial Accident Board,*
**AFFIRMED.**

Stephen T. Morrow, Esquire, Rhoades & Morrow, LLC, Wilmington, Delaware, *Attorney for Employee-Appellant.*

H. Garrett Baker, Esquire, Elzufon, Austin & Mondell, Wilmington, Delaware, *Attorney for Employer-Appellee.*

**CONNER, J.**

For the reasons below, the Court **AFFIRMS** the decision of the Industrial Accident Board ("IAB") in favor of Allen Harim Foods, LLC ("Employer"):

1. On September 3, 2018, Karen Shaffer, ("Claimant" and/or "Appellant") suffered injuries to her left thumb and both wrists while working for Employer. Following the injury, Claimant was receiving total disability benefits. Claimant underwent four surgeries, one each year from 2019 through 2022.[1]

2. Employer filed a Petition for Review on May 19, 2022 alleging that Claimant was released to work by her treating physician, is physically capable of working with some restrictions and does not have any partial disability.

3. The IAB conducted a hearing on February 1, 2023. On February 9, 2023, the IAB issued its decision granting Employer's Petition for Review to terminate Claimaint's total disability benefits.

4. Claimant appeals the IAB's granting of Employer's Petition for Review arguing that she remains totally disabled because she is a *prima facie* displaced worker and that Employer cannot meet its burden of proof.

---

[1] The first surgery was performed by Dr. Richard DuShuttle on March 28, 2019. The second, third, and fourth surgeries were performed by Dr. Matthew Eichenbaum on August 14, 2020, June 1, 2021, and January 14, 2022.

5. Pursuant to 29 *Del. C.* § 10142(a), this Court possesses jurisdiction over appeals from administrative agencies including the IAB. The Court reviews the IAB's decision to ensure the decision is supported by substantial evidence and free from legal error.[2] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] Substantial evidence is more than a scintilla but less than a preponderance of the evidence.[4] The credibility of the witnesses, the weight of the witnesses' testimony and the reasonable inferences drawn from that testimony are to be determined by the IAB.[5] Deference must be given to the specialized competency and experience of the IAB.[6] If the Court finds the IAB has made no errors of law, the Court reviews for abuse of discretion.[7] The IAB abuses its discretion when the decision exceeds the bounds of reason in light of the matter's circumstances.[8]

6. The IAB heard testimony from two medical doctors. Dr. Andrew Gelman testified on behalf of Employer. Dr. Gelman examined Claimant four times between September 2019 and April 2022. Dr. Gelman opined that Claimant was physically capable of working full-time with no restrictions to her right

---

[2] *Washington v. Delaware Transit Corp.*, 226 A.3d 202, 210 (Del. 2020).
[3] *Id.* (internal citations omitted).
[4] *Id.*
[5] *Clements v. Diamond State Port Corp.*, 831 A.2d 870, 878 (Del. 2003).
[6] *Padgett v. R&F Metals, Inc.*, 2021 WL 2742593, at *1 (Del. Super. June 30, 2021).
[7] *Id.*
[8] *Id.*

hand and no repetitive, forceful pushing or pulling with her left hand. Dr. Elliot Leitman testified on behalf of Claimant. Dr. Leitman opined Claimant is physically capable of working in a full-time medium-duty capacity. Also considered by the IAB was Claimaint's history with Dr. Eichenbaum, who cleared her for work as of March 7, 2022.

7. The IAB also heard testimony from Dr. Neil Kaye, a board-certified psychiatrist, on behalf of Employer. Dr. Kaye evaluated Claimant and reviewed her medical records in conjunction with the evaluation. Dr. Kaye testified that Claimaint's mental health and emotional problems are unrelated to the injuries she suffered and were not exacerbated by the injuries she suffered. Furthermore, Dr. Kaye opined that Claimant is capable of working full-time with no restrictions regarding her mental health and emotional problems.

8. Dr. Barbra Riley, a senior vocational case manager, also testified on behalf of Employer. Dr. Riley prepared a labor market survey focused on Claimant. The labor market survey was representative of some of the jobs available in the labor market that are deemed appropriate for Claimant. Important to note is that this was not an exhaustive list. Although Claimant had worked for Employer in a production job setting, Claimant had previously held customer service jobs and had transferable skills based upon those previous

3

jobs and education. Dr. Riley found Claimant's transferable skills to include critical thinking, communication, self-control, listening, working independently and working with others. The jobs depicted on the labor market survey were appropriate for the medium-duty restrictions Dr. Leitman proposed, as the jobs were sedentary to light duty. Additionally, reasonable accommodations, like a one-handed keyboard, could be provided. All of the 24 jobs listed on the labor market survey are within Claimant's education, experience, abilities, and locale. The jobs are considered entry-level, meaning no transferable skills would actually be necessary and on-the-job training would be provided.

9. Claimant testified before the IAB that she has belonged to five unions for 20 years and is skilled in working with her hands. Claimant also testified that she has worked customer services jobs in the past but does not like them because of the interactions with people causing her to be pushed to argue frequently. Claimant testified she is aware that Dr. Gelman cleared her to work in April 2022 and Dr. Leitman cleared her to work in September 2022. She last saw Dr. Eichenbaum in March of 2022 and has not sought care from any other orthopedic doctors regarding her injuries since that time. Lastly, Claimant does not take any medications for her injuries.

10. The IAB decision thoroughly summarizes each of the witnesses' testimony. The IAB concluded that all evaluating physicians determined Claimant is physically capable of working in at least a full-time medium-duty capacity with some restrictions to her left, non-dominant hand. Claimant even agreed that no doctor has opined she is unable to work due to the injuries to her upper extremities. Therefore, the IAB accepted the medical opinions of the doctors that Claimant has been capable of working since she was released from Dr. Eichenbaum's care on March 7, 2022. The Court must give deference to the experience of the IAB and will not disturb the credibility and weight given by the IAB to the witnesses' testimony.

11. Since the IAB concluded Claimant was not totally physically disabled, the burden then shifts to Claimant to prove that she is a *prima faice* displaced worker.[9] A worker is considered displaced when "not completely incapacitated for work, [but] is so handicapped by a compensable injury that [they] will no longer be employed regularly in any well-known branch of the competitive labor market and will require a specially-created job if [they are] to be steadily employed."[10] Factors to consider when determining if a person is a displaced worker include medical records, age, education, background, occupational experience, emotional stability, nature of work performable

---

[9] *Roos Foods v. Guardado*, 152 A.3d 114, 118-19 (Del. 2016).
[10] *Id.* at 119.

and availability of such work.[11] An employee may be a *prima facie* displaced worker if the level of obvious physical impairment taken in conjunction with the factors listed above make a *prima facie* showing that the worker is displaced.[12] If the evidence does not show that the employee is *prima facie* displaced, then the employee could be considered "actually" displaced by showing they have made "reasonable efforts to secure suitable employment which have been unsuccessful because of the injury."[13] When making its determinations, the IAB considered Claimant's education level, work experience, transferable skills, and mental health condition. The IAB also noted that Claimant has previously secured other employment with her education level and mental health disorders, which she was diagnosed with in 2016. After thoroughly considering all necessary factors, the IAB concluded that Claimant is not a prima facie displaced worker because she can be employed in the regular labor market and does not require a specifically created job.

12. Since the IAB determined Claimant was not a *prima facie* displaced worker, Claimant could have attempted to establish that she is an "actually"

---

[11] *Id.*
[12] *Id.*
[13] *Id.*

displaced worker.[14] However, Claimant did not testify about attempting to search for a job and therefore, she cannot prove she is a displaced worker. Additionally, there are jobs available in the labor market that are suitable for Claimant.

13. The IAB also determined that Claimant was not a partially disabled worker due to Dr. Riley's labor market survey and opinion showing Claimant could earn an average of $673.10 a week compared to her previous weekly salary of $606.71.[15] Since Claimant would not suffer a wage loss, the IAB determined she was not entitled to partial disability benefits.

14. Claimant makes three arguments. First, the IAB's decision that she is no longer medically disabled is not supported by substantial evidence. Second, the IAB's finding that she is not a *prima facie* displaced worker is an error of law and not supported by substantial evidence. Lastly, the IAB's decision that Employer met its burden of proof in proving available jobs is not based on substantial evidence.

15. Regarding Claimaint's first argument, it is extremely clear to the Court that the IAB's finding that Claimant to be no longer medically disabled is supported not only by substantial evidence but all the evidence. All three

---

[14] *Id.*

[15] *Gen. Motors Corp. v. Stewart*, 2011 WL 4638775, at *6 (Del. Super. Sept. 29, 2011). ("An employee is considered partially disabled when they suffer 'a partial loss of wages as a result of [their] injury.'").

doctors that examined and/or worked with Claimant found her to be able to physically work full-time in at least a medium-duty capacity. The Court finds the IAB's determination to be supported by substantial evidence.

16. To support Claimant's second argument, she states Dr. Riley had no personal knowledge of her communication skills, listening skills or ability to work with others because Dr. Riley never spoke with Claimant before preparing the labor market survey. Claimant does not provide any authority that requires the vocational case manager to speak with a Claimant before conducting the labor market survey. Although Claimant has primarily worked jobs in a production capacity, she has been employed in customer service-based positions. Again, the IAB decision carefully considered all of the relevant factors when determining that Claimant was not a *prima facie* displaced worker, including Dr. Kaye's assessment of Claimant's mental health. Claimant's apparent preference for production-type jobs does not mean she does not possess other transferable skills. The IAB's decision that Claimant is not a *prima facie* displaced worker was not an error of law and was supported by substantial evidence.

17. In further support of Claimant's third argument, she offers two theories. First, the provided list of available jobs are not optimal for Claimant because of her injuries. Second, without knowing Claimant's communication skills

8

and with knowing Claimant's work history, the jobs provided via the labor market survey were not appropriate. As cited to by Claimant, the Delaware Supreme Court has found that "[j]obs must be realistically 'within reach' of the disabled person."[16] Again, Claimant was not found to be totally medically disabled by any doctor that examined her. Furthermore, the jobs listed on the labor market survey were entry-level positions, all providing on-the-job training. Further reasonable accommodations are available through the employer, Delaware Department of Labor's Division of Vocational Rehabilitation or other free services. Claimant's doctors described some restrictions for her left hand, but again there are a multitude of accommodations, including one-handed keyboards, that are available. The jobs listed on the labor market survey are "within reach" of Claimant. Even though Dr. Riley did not speak to Claimant about her preference for non-customer service-based positions, that does not mean those positions are not appropriate for Claimant. The IAB heard Dr. Kaye's testimony and determined that Claimant did not possess any mental health diagnosis that would prevent her from working. To reiterate, Claimant's preference to work with her hands and testimony that she is quick to argue with people does not preclude her from working customer service-based positions. The

---

[16] *Campos v. Daisy Constr. Co.*, 107 A.3d 570, 576 (Del. 2014).

9

jobs listed on the labor market survey are appropriate for Claimant. Therefore, Employer met its burden of showing the required job availability establishing that she is not a displaced worker.

18. Lastly, the IAB's decision that she would not suffer a wage loss and thus not entitled to partial disability benefits is supported by the record.

19. Accordingly, the record below reflects the IAB's decision to grant Employer's Petition for Review was supported by substantial evidence and free from legal error. The decision of the IAB is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Mark H. Conner
Mark H. Conner, Judge

cc: Prothonotary