JAMES A. STEPPI, Claimant-Appellant,
v.
CONTI ELECTRIC, INC., Employer-Appellee.
No. 476, 2009.
Supreme Court of Delaware.
Submitted: December 16, 2009.
Decided: March 2, 2010.
Revised: March 16, 2010.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

ORDER
HENRY DuPONT RIDGELY, Justice.
This 16th day of March 2010, it appears to the Court that:
(1) Claimant-Appellant James A. Steppi ("Steppi") appeals from the Superior Court's decision overturning an award of total disability benefits by the Industrial Accident Board (the "Board"). Steppi contends that the Board's decision approving his worker's compensation claim was supported by substantial evidence and that the Superior Court committed reversible error by holding that the findings of the Board were clearly wrong. We find merit to his argument, and reverse.
(2) Steppi worked as an electrician with Conti Electric ("Conti"), and was assigned to work at the Valero Petroleum Refinery in Delaware City in the "Sulfur Recovery Unit" ("SRU"). Steppi, along with his fellow workers, carried two individual mobile gas meters intended to warn of the presence of certain types of gas, including hydrogen sulfide. Additionally, five stationary gas meters were located at the more dangerous work-sites.
(3) On the morning of December 11, 2006, Steppi left the SRU to retrieve materials and supplies from a supply trailer. As Steppi was walking toward the supply trailer, he recalled that a benzene leak had recently occurred in the area. He proceeded another 40 feet and felt his body become very warm and he suddenly felt very woozy. After arriving at the supply trailer, the materials foreman told him to sit down. His co-workers noted that he looked "red as a lobster." Steppi stated that his head felt fuzzy and he noticed a tingling in his back, neck and fingers. Steppi experienced dizziness and became weak, lightheaded and disoriented. Steppi testified that he "was really almost in and out of it," and felt like his head was in a fog. An ambulance was called.
(4) When the EMT workers and ambulance arrived they assessed Steppi and prepared an EMT report. The report did not mention chemical exposure, confusion or similar conditions, but did contain Steppi's statement that he "became very flushed followed by episode of pallor, nausea, tachypnea, chest tightness, and tingling in the hands immediately prior to his near-syncopal event."
(5) The EMT workers transported Steppi to the hospital. The hospital record details back pain the day before the incident and also pain in his neck, head and body, and that he felt rigid and tense. The record also showed that Steppi was initially bright red, but turned pale white; he was not suffering from chest pain; and he complained that he felt shaky and had lower back and right hip pain. The assessment did not mention nausea, confusion or other neurological issues related to exposure to toxic chemicals. Prior to leaving the hospital, Steppi had no trouble walking.
(6) Steppi was driven back to work to retrieve his lunch box, and he drove himself home from the plant. After the incident, Steppi saw a series of doctors because of increasingly severe breathing, heart and liver problems, as well as confusion and lack of focus. Steppi had previously seen one of the doctors for an asbestos claim, and was afraid that his asbestosis had progressed to lung or liver cancer.
(7) At the hearing before the Board, all experts agreed that "something" happened to Steppi on December 11, 2006, while he was at work. Dr. Margit L. Bleecker, an environmental occupational neurologist, opined that the "something" was more likely than not hydrogen sulfide exposure. Dr. Orn Eliasson, the only testifying expert that also examined Steppi prior to the December 11, 2006 incident, opined that Steppi was exposed to hydrogen sulfide; he referred to it as "a textbook case" of hydrogen sulfide exposure.
(8) Dr. Albert Rizzo testified that hydrogen sulfide is a natural by-product of petroleum refining and that the same level of toxic exposure can lead to radically different effects from one person to another. Dr. Rizzo further explained that Steppi's elevated blood pressure on the day of the incident and other symptoms presented by Steppi were consistent with hydrogen sulfide exposure. Dr. Rizzo testified that hydrogen sulfide exposure can lead to mental status changes such as confusion, frustration, agitation, and excitation. All the experts at the hearing agreed that Steppi was correctly diagnosed with somatoform disorder and that Steppi was not a malingerer.
(9) The Board found that "Claimant has met his burden of proof that he was exposed to hydrogen sulfide, and that his somatoform disorder is related to the December 11, 2006 work incident." Notwithstanding Employer's argument that there was no gas leak, the Board concluded there was after finding Claimant's testimony and the testimony of Drs. Eliasson and Bleecker persuasive. Specifically, the Board noted evidence of the lack of dependability of the gas sensors and determined that there was a gas leak even though the sensors did not go off.
(10) Conti appealed and the Superior Court reversed after finding no evidence of a gas leak and no causal connection between the incident and Claimant's disability. This appeal followed.
(11) We review the legal conclusions of the Board de novo.[1] We review the Board's factual findings to determine whether they are supported by substantial evidence.[2] Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[3] Neither this Court nor the Superior Court in workers compensation appeals sits as the trier of fact nor do we have authority to weigh the evidence, determine questions of credibility, or make factual findings and conclusions.[4] In reviewing the record to determine if there was substantial evidence, the Superior Court must consider "the record in the light most favorable to the party prevailing below, resolving all doubts in its favor."[5] "Only when there is no satisfactory proof in favor of a factual finding of the Board may the Superior Court, or this Court for that matter, overturn it.[6]
(12) The Board articulated the primary issue in this case as one of causation.[7] In the Board's words, "[Steppi] must show that he was exposed to a toxic gas on December 11, 2006 . . . and that this incident caused or triggered his psychiatric condition. . ."[8] The Board first determined that the toxic detection sensors were not always accurate, and that a failure of the sensors to detect hydrogen sulfide on the day of the incident was not dispositive of Steppi's claim.[9] The Board considered testimony that the air and individual sensors had previously alerted when there were no leaks. It determined that the evidence supported Claimant's testimony on the lack of dependability of the meters.[10]
(13) In determining whether Steppi's exposure to hydrogen sulfide caused his somatoform disorder, the Board noted that all of the testifying medical experts agreed that Steppi had a somatoform disorder, but disagreed as to the cause.[11] Here, the Board found the testimony of Drs. Bleecker, Eliasson and Romirowsky more persuasive than that of Dr. Kaye.
(14) It is well-settled law that the Board may accept the opinion testimony of one expert while summarily disregarding the opinion testimony of another expert.[12] However, this Court has held that "an award cannot stand on medical testimony alone, if the medical testimony shows nothing more than a mere possibility that the injury is related to the accident."[13] If such medical testimony can be supplemented by "other credible evidence tending to show that the injury occurred directly after the trauma and without interruption, we think that such evidence would be sufficient to sustain an award."[14] In General Motors v. Freeman, the medical evidence on causation indicated only a possibility, but the claimant's testimony as to the onset of his health problems and the absence of any similar problems prior to the accident at work supplemented the medical evidence to provide the Board with a sufficient evidentiary basis for its decision.[15]
(15) In this case, the Board was presented with conflicting medical testimony. Pursuant to its discretion, the Board found the testimonies of Drs. Eliasson and Bleecker to be more credible than Dr. Kaye's. Drs. Eliasson and Bleecker's medical testimony provided more than a mere possibility of Steppi's somatoform disorder being caused by hydrogen sulfide exposure; Dr. Eliasson testified that Steppi's symptoms presented a "textbook case" of hydrogen sulfide exposure while Dr. Bleecker testified that it was "more likely than not" that Steppi had been exposed to hydrogen sulfide.
(16) The absence of evidence that a hydrogen sulfide leak was detected by the gas sensors or other personnel of the employer was considered by the Board and found to not be dispositive. While the Board could have drawn an inference as the Superior Court did, that the meters were in fact only over-sensitive, the testimony as a whole, including Claimant's testimony, also allowed the inference that there was an industrial accident. As the trier of fact, it is the Board's responsibility to "weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions." Because the Board "has expressly been entrusted with the power to find the facts, its fact finding must be affirmed if supported by any evidence, even if the reviewing court thinks the evidence points the other way."[16] The decision of the Board was supported by the minimum quantum of evidence required and should have been affirmed.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED.
NOTES
[1] Scheers v. Indep. Newspapers, 832 A.2d 1244, 1246 (Del. 2003).
[2] Id. (citing Keeler v. Metal masters Foodservice Equip. Co. 712 A.2d 1004 (Del. 1998)).
[3] Id.
[4] Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del. 1965).
[5] General Motors Corp. v. Guy, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991).
[6] Id. at 66-67.
[7] Steppi v. Conti Elec., I.A.B. Hearing No. 1302586, at 33 (Dec. 5, 2008).
[8] Id.
[9] Id. at 35.
[10] Id. at 34-35.
[11] Id. at 39.
[12] Standard Distributing Co. v. Nally, 630 A.2d 640, 646 (Del. 1993).
[13] General Motors Corp. v. Freeman, 164 A.2d 686, 688 (Del. 1960).
[14] Id.
[15] Id.
[16] 8 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 130.01[3] (2009).