## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CECILIA OLUGBADE-OSEYEMI, M.D., )
                                               )
           Appellant, )
                                               )
     v. )  C.A. No. N24A-02-001 KMV
                                               )
DELAWARE BOARD OF MEDICAL )
LICENSURE AND DISCIPLINE, )
                                               )
           Appellee. )

Decided: March 12, 2025
Submitted: December 9, 2024

## **ORDER**

*Upon Appeal from the Decision of the*
*Delaware Board of Medical Licensure and Discipline*:
**AFFIRMED**

Cecilia Olugbade-Oseyemi, MD; *Pro Se Appellant*.

Jennifer L. Singh, Deputy Attorney General; *Counsel for Appellee*.

**VAVALA, J.**

1

To protect the health, safety, and welfare of Delawareans, the state medical board demands strict clinical competency standards be met before granting a license to practice medicine in the First State. This is an appeal from the medical board's decision denying an applicant's request for certification. The medical board determined the applicant failed to establish, by clear and convincing evidence, that she merits a waiver of the statutory examination and competency requirements. On appeal, the applicant argues the Board erred because her education, training, experience, and conduct suffice to obtain medical licensure. This decision turns on whether the medical board erred as a matter of law or abused its discretion in denying the applicant's licensure—this Court finds it did neither. Accordingly, the medical board's decision is **AFFIRMED.**

## I. BACKGROUND[1]

Appellant Cecilia Olugbade-Oseyemi, MD brings the instant appeal against appellee Delaware Board of Medical Licensure & Discipline seeking reversal of the Board's refusal to certify her application to practice medicine in Delaware.[2]

---

[1] The facts in this decision reflect the Board's findings based on the record developed at the July 11, 2023, hearing ("Hearing"). *See* Docket Item ("D.I.") 22 ("App."). The Board's exhibits are cited as "A#." Citations to the Hearing transcript are in the form "Tr. #." D.I. 22 at A47–104.

[2] D.I. 1 ("Appeal").

Dr. Olugbade-Oseyemi's personal journey is the epitome of grit, but her medical training has taken place in fits and starts.[3] During her early years in Nigeria, West Africa, and through a kind principal's tutelage, she developed a keen interest in the sciences.[4] She studied biology at the prestigious University of Ife, completed a compulsory year of youth service, and then returned to the University of Ife to study medicine but did not earn her degree.[5] Because her relatives were unsupportive, she gave up medicine to teach biology, got married, and became a mother.[6] When her husband was accepted to a PhD program at the University of Pittsburgh, she and her two sons moved with him to America.[7] Sadly, her husband died shortly after their arrival, and she was thrust into nursing to "make ends meet" in 1993.[8]

---

[3] Tr. 8:18–19.

[4] *Id.* at 10:11–20, 11:1–2.

[5] *Id.* at 8:24–9:14 (the University of Ife is now called Obafemi Awolowo University), 36:20–22 (Ms. Truitt, a public member of the Board, acknowledging that attending University of Ife is "like going to Harvard University").

[6] *Id.* at 9:15–22 ("[M]y family, everybody w[as] not supportive of me. They wanted me to be married because my boyfriend was going . . . to America to do his PhD."), 10:11–17 ("Most of [the girls in school] wanted to do home economics so we can be a good wife to our husband. That's what they want their girls to do.").

[7] *Id.* at 10:21–23.

[8] *Id.* at 10:23–25, 11:3–10, 27:20–21, 36:3–4.

Serving as a nurse "in every unit of the hospital," Dr. Olugbade-Oseyemi worked her way up to RN supervisor; yet her ambition to become a doctor remained.[9] She completed a post-baccalaureate premedical program, took the MCAT, and was admitted to medical school at Temple University.[10] She remarried and moved to Philadelphia to pursue her dream of becoming a doctor, but an unexpected pregnancy and her eldest sister's death forced her to defer her medical studies for another year.[11] She returned to medical school and ultimately graduated in 2005,[12] but challenges in her medical training persisted. As her family faced financial struggles, she "fell back on . . . [her] nursing degree to work."[13] In 2009, she managed a year of residency in family medicine at Chestnut Hill Hospital,[14] but when her second husband left with their only car,[15] she decided to "focus on [her young] daughter" and forwent applying for a medical residency.[16]

---

[9] Tr. 11:11–18.

[10] *Id.* at 8:18–19.

[11] *Id.* at 12:3–5, 33:20–23, 34:9–10.

[12] *Id.* at 12:5–12; App. at A2.

[13] *Id.* at 12:11–18, 28:5–8.

[14] *Id.*

[15] Tr. 13:3.

[16] *Id.* at 13:5–7, 34:10–12, 13–18. She dedicated her life to raising her children, and the results are evident of her remarkable parenting. *Id.* at 13:24–24. Her daughter is now studying engineering in college, her youngest son is a computer engineer, and her eldest son is a urology surgeon. *Id.* at 13:18–25.

Ten years later, in 2019, Dr. Olugbade-Oseyemi finally passed each step of the United States Medical Licensing Examination ("USMLE"), and she completed the Drexel Medicine Physician Refresher/Reentry Program in 2020.[17]  She applied to close to a hundred residency programs during the 2020–21 and 2020–22 cycles but was rejected from them all.[18]

Notwithstanding these significant obstacles to her medical training, she was convinced her past education coupled with nursing experience was enough to qualify for a waiver under the MPA.  In August 2022, Dr. Olugbade-Oseyemi applied for certification to practice medicine in Delaware.[19] After reviewing her application for licensure, the Board notified Dr. Olugbade-Oseyemi's of its proposed denial "based upon her failure to meet statutory qualifications."[20]  Dr. Olugbade-Oseyemi then requested, and the Board thus assembled, a hearing to address her concerns.[21]  At the July 2023 Hearing, the Board was unpersuaded by her arguments for waiver.[22]

---

[17] App. at A23–24.

[18] Tr. 22:9–14, 27:13–14.

[19] App. at A1–10.

[20] *Id.* at A4–5, A24.

[21] Tr. 5:17–23. The Board reviewed her application in November 2022 and attempted to schedule a hearing in January, March, and May 2023, but Dr. Olugbade-Oseyemi requested to reschedule each time. Appeal Opp'n at 5.

[22] *See generally* D.I. 20, BOARD ORDER ("Decision").

The Board issued an order in September 2023 denying Dr. Olugbade-Oseyemi's application based on her failure to show by clear and convincing evidence "sufficient mediation to waive her failure to pass all three steps of the USMLE within seven years or her dismissal from residency for incompetence."[23] Shortly thereafter, Dr. Olugbade-Oseyemi moved for reconsideration.[24] That too was denied.[25] She then timely appealed.[26]

## II. DISCUSSION

The Superior Court exercises "appellate jurisdiction over final agency decisions under 29 *Del. C.* § 10142."[27] This Court's review of a "Board's decision is limited to an examination of the record for errors of law and a determination of

---

[23] *See* App. at A24–27.

[24] *See generally id.* at A11–13.

[25] *See supra* note 27.

[26] *See* Appeal. Dr. Olugbade-Oseyemi argues the Board erred as a matter of law because the state of New York has "the exact requirements" as Delaware. D.I. 32 at 17. This argument fails because states may differ in regulating the practice of medicine within their jurisdiction. Dr. Olugbade-Oseyemi also argues the Board discriminated against her and violated her due process rights. But other than vague assertions, she fails to identify any specific facts tending to show the Board failed to follow MPA procedures or the Board engaged in discriminatory conduct against her based on her race or age; nor has she alleged the MPA's clinical competency standards are not rationally based. In sum, other than obliquely invoking the Constitution, there is nothing here to support a constitutional due process or equal protection violation by the Board. Thus, this Court declines to address the issue further.

[27] *Quality Assured Inc. v. David*, 2022 WL 17442738 (Del. Super. Dec. 6, 2022).

whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[28]

This Court reviews the Board's legal conclusions de novo for errors in formulating or applying legal precepts.[29] The construction of a state statute is a legal issue.[30] "If there is no error of law and substantial evidence supports the Board's findings, the Board's decision must be affirmed."[31] Conversely, "[i]f the Board overrides or misapplies the law," this Court "will not hesitate to reverse."[32]

---

[28] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (citing *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)); *see also Gen. Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960); *Rosenblum v. City of Wilm.*, 2024 WL 3876630, at *1 (Del. Super. Aug. 20, 2024); *Johnson v. Canalfront Builders, LLC*, 2024 WL 862442, at *3 (Del. Super. Feb. 29, 2024), *aff'd*, 2024 WL 3886193 (Del. Aug. 21, 2024); *Imhof v. Del. Bd. of Med. Licensure and Discipline*, 2022 WL 247464, at *3 (Del. Super. Jan. 26, 2022) (citing *Optima Cleaning Sys., Inc. v. Unemployment Ins. Appeal Bd.*, 2010 WL 5307981, at *2 (Del. Super. Dec. 7, 2010)).

[29] *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022) (citing *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)) (internal quotation marks omitted).

[30] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007) (citing *Page v. Hercules*, 637 A.2d 29, 32 (Del. 1994)).

[31] *Zayas*, 723 A.3d at 785 (quoting *Stevens v. State*, 802 A.2d 939, 944 (Del. Super. 2002) (internal citations omitted) (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).

[32] *Baxter v. Verizon Commn's*, 2024 WL 3581660, at *3 (Del. Super. July 30, 2024) (first citing *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954); then citing *Ohrt v. Kentmere Home*, 1996 WL 527213, at *3 (Del. Super. Aug. 9, 1996); and then citing *City of Wilm. V. Clark*, 1991 WL 53441, at *3 (Del. Super. Mar. 20, 1991)).

"Absent error of law, the standard of review for a Board's decision is abuse of discretion."[33] An abuse of discretion occurs when the Board's decision has "exceeded the bounds of reason in view of the circumstances, [or] so ignored recognized rules of law or practice as to produce injustice."[34]

The Board's fact finding is reviewed under the substantial evidence standard. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35] Put differently, substantial evidence is "more than a scintilla but less than a preponderance of the evidence."[36]

In reviewing an administrative board's factual determinations, the Court must "take due account of the experience and specialized competence of the agency and of the purposes of the basic law under which the agency has acted."[37] In this context, it is not this Court's province to independently weigh the evidence, determine

---

[33] *Person-Gaines v. Pepco Hldgs., Inc.*, 981 A.2d 1159, 1160 (Del. 2009) (citing *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Mar. 24, 2008)).

[34] *Zayas*, 273 A.3d at 786 (quoting *Roos Foods*, 152 A.3d 114, 118 (Del. 2016)) (alteration in original).

[35] *Fowler v. Perdue, Inc.*, 2024 WL 3196775, at *8 (Del. June 24, 2024) (citing *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022)) (cleaned up).

[36] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013)); *id.* at 871 ("[T]his factual finding depends in large measure on the Board's assessment of the credibility of the witnesses who testify before it. It is the exclusive function of the Board to evaluate the credibility of witnesses." (citing *Hardy v. E. Quality Vending*, 2015 WL 2378903, at *6 (Del. Super. May 12, 2015))).

[37] 29 *Del. C.* § 10142(d).

questions of credibility, or make its own factual findings,[38] but rather, to "view the record in the light most favorable to the prevailing party below."[39] Further, "[t]here is a presumption in favor of validity of the Board's decision and the burden of showing the error rests with the party raising the objection to such decision."[40] Here that burden squarely rests on Dr. Olugbade-Oseyemi.

Delaware's Medical Practice Act ("MPA") regulates the practice of medicine in the interests of public health, safety, and welfare.[41] The Board is solely authorized to issue medical licensure. In so doing, it acts as Delaware's supervisory, regulatory, and disciplinary body for medical practice.[42] This means the Board may conduct hearings to evaluate the "mental capability of physicians to engage in the practice of medicine" as needed.[43] The procedural hurdles to obtain certification are high, and rightfully so. To clear such hurdles, applicants must establish they possess the necessary education, training, conduct, and communication skills.[44]

---

[38] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995)).

[39] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258–59 (Del. 2013) (citing *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del. 2010) (TABLE)).

[40] *Foraker*, 2022 WL 599047, at *3 n.40 (citing *Phoenix Steel Corp. v. Garton*, 1980 WL 687396, at *2 (Del. Super. July 25, 1980)).

[41] 24 *Del. C.* § 1701.

[42] *Id.* § 1710(a).

[43] *Id.* §§ 1713(a)(1)–(2), (11).

[44] *Id.* § 1720(b).

**A. Dr. Olugbade-Oseyemi failed to meet the Board's examination requirements.**

Under 24 *Del. C.* §1720, applicants must pass professional exams "in accordance with the Board's rules and regulations."[45] Specifically, under Board Regulation 3.2.2, applicants must pass each step of USMLE within seven years unless they demonstrate "additional experience acceptable to the Board."[46] The Board correctly found that, "in taking 16 years to pass all three steps of the USMLE, Dr. Olugbade-Oseyemi clearly failed to comply with 24 *Del. C.* § 1720(b)(7)."[47]

Dr. Olugbade-Oseyemi argues on appeal the regulation is "practically unenforceable."[48] That may be. She accurately calculated that, because an applicant can take each Step up to 6 times, the maximum term would equal 13.5 years.[49] Yet even if the limit for testing were expanded, as she suggests, "Dr. Olugbade-Oseyemi took 16 years to pass all three steps of the USMLE."[50] That span exceeds both the

---

[45] *Id.* §§ 1720(b)(7), 1721.

[46] 24 *Del. Admin.* § 1700-3.2.2.

[47] Decision at 26.

[48] 24 *Del. Admin.* § 1700-3.2.2; Reply at 4 (emphasis removed).

[49] Reply at 4 ("[E]ach USMLE Step may be taken by an applicant for four and a half years (per FSMB, the first three attempts of a USMLE Step can be taken twice a year, and after that, it can only be taken once a year). Four and a half years times three equals thirteen and a half years.") (emphasis removed).

[50] Decision at 26 ("Dr. Olugbade-Oseyemi failed Step 1 of the USMLE twice before passing in 2003. She then failed Step 3 of the exam on three occasions, in 2011, 2012, and 2014[,] before passing ultimately passing in 2019, ten years after being dismissed from her residence program. . . . She testified that she passed Step 3 two years ago thus demonstrating that she has the clinical competency to practice independently, but in reality,

7- and 13.5-year cap. Consequently, despite her challenge to the limit imposed on attempts by examinees, the Board's conclusion that Dr. Olugbade-Oseyemi facially failed to meet the Board's examination requirements under Board Regulation 3.2.2 is supported by substantial evidence.

**B.    Dr. Olugbade-Oseyemi failed to meet the Board's disciplinary requirement associated with candor.**

Under 24 *Del. C.* § 1720(b)(4)(e), applicants must swear or affirm they were not subject to past criminal conduct related to medical practice or prior disciplinary action from a hospital, including "nonrenewal of privileges for cause[.]"[51]  The Board determined Dr. Olugbade-Oseyemi did not pass muster because she was placed on probation by, and dismissed from, her hospital residency program.[52]  Upon reviewing the Verification of Post-Graduate Medical Training (the "Verification") submitted by the director of Chestnut Hill Hospital's residency program, the Court

---

she passed Step 3 four years ago and only after attempting to pass it over the course of eight years.").

[51] An applicant must satisfy basic certification requirements for licensure, including "Submit[ing] to the Board a sworn or affirmed statement that the applicant: . . . [h]as not been disciplined by a licensed hospital or by the medical staff of the hospital, including the removal, suspension, or limitation of hospital privileges, the nonrenewal of privileges for cause, the resignation of privileges under pressure of investigation or other disciplinary action, if the discipline was based upon what the hospital or medical staff found to be unprofessional conduct, professional incompetence, or professional malpractice". 24 *Del. C.* § 1720(b)(4)(e).

[52] Decision at 26.

agrees with the Board—Dr. Olugbade-Oseyemi does not meet the requirements of 24 *Del. C.* § 1720(b)(4)(e)."[53]

On appeal, Dr. Olugbade-Oseyemi challenges the Board's interpretation of the Verification and asks the Court to consider only "relevant" portions of the Verification—those that indicate she successfully completed the program and was never disciplined.[54] The Court cannot accede to this selective reading of the Verification or Dr. Olugbade-Oseyemi's application, nor should the Board have been required to do so.

Specifically, the Court rejects Dr. Olugbade-Oseyemi's argument because it ignores the crux of the Board's reasoning. Sure, the Verification reflects that she completed her first year of residency.[55] And the question "Was this applicant ever disciplined or placed under investigation" is marked "No."[56] But Dr. Olugbade-Oseyemi disregards other sections in the Verification reflecting that she was placed on probation, instructors filed negative reports on her, and "limitations or special restrictions were placed on [her] because of questions of academic incompetence[,] disciplinary reasons[,] or any other reasons."[57]

---

[53] *See id.*

[54] Reply at 5; App. at A6–7.

[55] App. at A6.

[56] *Id.*

[57] *Id.*

Dr. McKenna's explanation for Dr. Olugbade-Oseyemi's removal from the program is informative:

> Cecilia Olugbade-Oseyemi was with the Chestnut Hill Family Medicine residency program for 1 year. She was placed on probation midway through the year for poor performance on two clinical rotations and a very poor score on her in training exam. During her probation her performance was adequate enough to continue her in the first year of her residency. At the end of the year it was decided that she had not grown enough and developed the skills to be advanced to the 2nd year.[58]

With that backdrop, the Board's reasoning is sound. The Verification reveals that Chestnut Hill Hospital placed Dr. Olugbade-Oseyemi on probation for poor performance and denied her from advancing to the second year of residency due to her professional incompetence. This amounts to a "nonrenewal of privileges for cause" by a licensed hospital. Accordingly, the Court affirms the Board's finding—Dr. Olugbade-Oseyemi falsely affirmed that she was not subject to prior disciplinary action from a hospital and, thus, failed to satisfy the certification requirements under 24 *Del. C.* § 1720(b)(4)(e), as supported by substantial evidence.

### C. Dr. Olugbade-Oseyemi failed to qualify for a waiver of the licensure requirements.

Under 24 *Del. C.* § 1720(e), the Board, by majority approval, may waive certain requirements if it finds by clear and convincing evidence that the "applicant's

---

[58] *Id.* at 7.

education, training, qualifications, and conduct have been sufficient to overcome" any deficiencies, the "applicant is capable of practicing medicine in a competent and professional manner;" and "granting of the waiver will not endanger the public health, safety, or welfare[.]"[59]   The Board correctly denied Dr. Olugbade-Oseyemi's request for a waiver.[60]

Dr. Olugbade-Oseyemi testified that her extensive nursing experience, passing Step 3 of the USMLE just three years before the Hearing, and her completion of one year of residency at Chestnut Hill Hospital and the Drexel refresher course established sufficient knowledge to practice medicine.[61]   She also testified that she was "not looking to do anything big, or even hospital care."[62]   She only sought "to do outpatient care. Particularly in under-represented areas, because [she] fe[lt] like that is where [she] can really make the most impact."[63]

---

[59] 24 *Del. C.* §§ 1720(e)(1)–(3). Subsections (e)(4)–(5) cover criminal convictions and thus irrelevant to the facts here. *See* Tr. 48:13–49:10, 53:25–54:12 (only one Board member supported granting a waiver). *But see* Tr. 54:13–55:7 (one Board member abstained due to mixed emotions: "[F]or her to get a residency now, and I don't even know what age she is, but I know it's so competitive, it's unlikely. Okay. And I won't be here when she applies again because of my retirement, but I really agree with [another Board member] that if I was here, I would like to grant -- and like me personally, I would be satisfied.").

[60] Tr. 18:18–18.

[61] *Id.* at 19:17–22, 21:6–8, 25:5–26:12, 27:16–17, 35:13–36:10.

[62] *Id.* at 13:18–23, 27:17–19.

[63] *Id.* at 13:23:25.

Despite her admirable intentions, Dr. Olugbade-Oseyemi does not qualify for a waiver under 24 *Del. C.* § 1720(e). She had not practiced any clinical medicine as a physician since she took the refresher course in 2020.[64] Although she could practice with one year of residency under her belt, she had difficulty finding positions because of her lack of clinical experience for the past several years, and most healthcare facilities require residency.[65] She applied for around 100 residency programs during the 2020–21 and 2020–22 cycles.[66] After receiving no acceptances, she "came to the painful realization" that she was unlikely to get into a residency program due to her age.[67]

But the refresher course, alone, is not a sufficient substitute for a residency program.[68] Several Board members expressed their desires to grant a waiver, only hesitating because a month of training cannot support competency compared to three

---

[64] *Id.* at 22:2–7.

[65] *Id.* at 22:23–2, 35:3–7 ("[A] lot of push towards now the residency programs teaching physical exam, real in-the-moment care and everything else. So a hesitation I have is the importance of the residency program is now even more important.").

[66] Tr. 22:9–14, 27:13–14.

[67] *Id.* at 22:14–18, 26:16–18, 27:15–16.

[68] *Id.* at 24:9–24 (raising concerns for competency and patient safety because a refresher course does not equate to a residency program in terms of training and Dr. Olugbade-Oseyemi's last exposure to clinical practice was nearly three years prior to the time of the Hearing), 27:24–28:3 (same), 28:10–11 (same), 42:21–43:7 (same), 44:21–45:2 (same), 46:3–6 (same).

or seven years of residency.[69]  One Board member aptly stated, "I'm sure she'll make a great physician.  But remember, our charge is the safety of the public in the state of Delaware."[70]

---

[69] *Id.* at 28:10–11, 52:13–15 ("I would like to see some current training and evaluation that's more than a month to feel comfortable."), 52:24–53:3 ("I think she's a remarkable person. Unbelievably, sincere and remarkable. But patient safety, and for her sake . . . I think there's a lot of education still needs to be done."), 53:4–5 ("I would really, really like to give her a license."), 53:14–24 ("[M]y personal bias is a year of training. Medicine has become so complex, so detailed. And if you're out of it for a prolonged period of time, just a couple of years, you really lose a lot. And someone this bright, this accomplished, I think can -- can get this in a relatively short period of time. . . . I'd be very comfortable with that as opposed to her completing a formal residency so she could apply for licensure."), 55:5–6 ("I think she's amazing. And that's a remarkable history. Remarkable.").

[70] *Id.* at 46:15–47:4 (raising concerns about Dr. Olugbade-Oseyemi's "ability to care for patients in a safe manner" because she was so far removed from clinical medicine), 47:13–15 ("Again, she hasn't had any training, only one year and that was it."), 47:20–22 ("[T]he issue is the safety issue with not seeing any patients . . . in over two-and-a-half years."), 52:6–12 ("[W]e have to take into account like what has transpired over the past 20 years. So this is a unique situation that there's been a little bit of patient contact here, a little bit here, you know. So I know what the law says. But then, competence and patient safety is another issue.").

The Board did note that there are other avenues for Dr. Olugbade-Oseyemi to obtain a waiver for medical licensure. *Id.* at 50:4–21 ("I am really looking for a way to grant a waiver on this, but I just don't feel comfortable that at this point there is evidence of -- for the clinical safety and competence and experience. That being said, there are alternative routes to obtain that training outside of residency programs. . . . [F]or instance, at Bayhealth and a lot of hospitals that have training programs. These exist in unpaid situations where you can go in and get further training. It mainly applies to foreign grads who are looking to get further experience while they're trying to get into a residency program. And if I saw six or twelve months of that, with a letter from the program director saying, caring, competent, then I would feel extremely comfortable giving a waiver in the near future."), 51:21–52:1 ("[I]f she could get six months or a year at a training program like as a preceptor and somebody says she's been in the clinic five days a week, she performed this and that, and then even though she's not board eligible or certified, the state of Delaware says one year residency.").

16

The Board correctly determined Dr. Olugbade-Oseyemi did not meet her burden to show she is qualified to receive such a waiver under 24 *Del. C.* § 1720(e). And her argument that she intends to limit her practice to out-patient care in underrepresented populations is unpersuasive. The MPA's clinical practice standards exist to ensure the health, welfare, and safety of all Delawareans; those in underrepresented areas or seeking out-patient treatment are entitled to nothing less that competency from the doctors treating them.

Having carefully reviewed the parties' positions and record on appeal, the Court finds the Board's factual findings are supported by the record and can discern no error in the Board's application of the law to the facts.

### III. CONCLUSION

This Court finds the Board's decision is supported by substantial evidence and free of legal error. Dr. Olugbade-Oseymei failed to show by clear and convincing evidence that her education, training, experience, and conduct are sufficient to overcome any deficiencies. She also failed to show she is capable of practicing medicine in a competent and professional manner, and that granting of the waiver will not endanger the public health, safety, or welfare. Accordingly, the decision by the Board is hereby **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ *Kathleen M. Vavala*
The Honorable Kathleen M. Vavala

17