**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

UNITED PARCEL SERVICE,  )
                                         )
      Appellant,  )
                                         )
      v.  )
                                         )    C.A. No. N24A-10-006 CLS
ASHLEY A. SMITH,  )
                                         )
      Appellee.  )

Date Submitted: February 27, 2025
Date Decided: May 19, 2025

**MEMORANDUM OPINION**

*On Appeal from the Industrial Accident Board,*
**AFFIRMED**.

Brandon R. Herling, Esquire of WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP, *Attorney for Appellant*.

Jonathan B. O'Neill, Esquire of KIMMEL, CARTER, ROMAN, PELTZ & O'NEILL, P.A., *Attorney for Appellee*.

**SCOTT, J.**

**INTRODUCTION**

This matter comes before the Court on appeal by Employer from a decision of the Industrial Accident Board of Delaware and the Board's subsequent clarification order. The case involves a worker's compensation claim by claimant, who sustained injuries from a work accident.

After a hearing, the Board found that claimant's surgeries were compensable and causally related to the work accident, and that claimant's total disability had ended. Following claimant's motion for clarification, the Board issued a clarification order determining that claimant remains totally disabled until her treating physician clears her to return to work.

For the reasons set forth below, the Board's decision was supported by substantial evidence and free from legal error, and both the decision and clarification order are **AFFIRMED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

**A. THE ACCIDENT AND CLAIMANT'S MEDICAL TREATMENT**

On February 3, 2022, Appellee Ashley A. Smith ("Claimant") suffered injuries to her lumbar spine, cervical spine, and ankle while in the course and scope

---

[1] The following facts are taken from the parties' briefings and the documents incorporated by reference therein.

of her employment with Appellant United Parcel Service ("Employer").[2] The incident occurred when Claimant fell while attempting to deliver a package.[3] Employer acknowledged these injuries as compensable.[4]

Less than a week later, Claimant complained of cervical and lumbar pain to Dr. Bley, who diagnosed her with a strain of the neck and back, as well as a sprain of her right ankle.[5] Claimant then underwent physical therapy at Premier Physical Therapy, where she received chiropractic treatment from Dr. McDermott.[6]

The next month, Claimant underwent MRI studies which revealed L4-L5 and L5-S1 nerve compression in her lumbar spine, as well as moderate right-sided foraminal stenosis at C4-C5 and mild bilateral foraminal narrowing at C5-C6 in her cervical spine.[7] Claimant began treatment for pain management with Dr. Xing, who noted decreased range of motion across Claimant's cervical and lumbar spine regions, along with tenderness throughout those areas.[8]

---

[2] Appellant's Opening Brief at 1, D.I. 10 ("Opening Br."); Appellee's Answering Brief at 4, D.I. 12 ("Answering Br.").

[3] Answering Br. at 6.

[4] Opening Br. at 1.

[5] *Id.*, Ex A at 4–5 ("IAB Decision"); Answering Br. at 6.

[6] IAB Decision at 5; Answering Br. at 6.

[7] IAB Decision at 5; Answering Br. at 6–7.

[8] IAB Decision at 6; Answering Br. at 6.

Throughout 2022, Claimant received epidural injections and nerve ablation procedures. She received cervical injections in April and July 2022, followed by nerve ablation at C4-C5 and C5-C6 in September 2022.[9] In February 2023, Claimant received several lumbar injections from Dr. Kader.[10]

Despite these conservative treatments, Claimant ultimately underwent surgical intervention. In May, 2023, Claimant was evaluated by Dr. Eskander, who diagnosed her with cervicalgia, pain in the thoracic spine, thoracic disc displacement, lumbar weakness, lumbar spinal stenosis, cervical radiculopathy, and C4-C5 disc displacement.[11] Dr. Eskander performed an anterior cervical discectomy and fusion from C4-C5 and C5-C6.[12] Later that fall, Dr. Eskander performed an anterior lumbar interbody fusion from L4-S1.[13]

## B. PROCEDURAL HISTORY

A controversy arose regarding Dr. Eskander's medical records. During his deposition, Dr. Eskander once referenced a fall that occurred on "2/3 of '23," creating arguments about whether Claimant had experienced a second, non-work-

---

[9] IAB Decision at 5; Answering Br. at 6–7.

[10] IAB Decision at 6; Answering Br. at 7–8.

[11] Opening Br. at 1; Answering Br. at 8; IAB Decision at 6–7.

[12] Opening Br. at 2; Answering Br. at 4; IAB Decision at 7.

[13] Opening Br. at 3; Answering Br. at 7–8; IAB Decision at 8.

related fall on February 3, 2023.[14]  Claimant denied experiencing any subsequent fall.

On July 19, 2023, Claimant filed a Petition for Additional Compensation Due, seeking compensation for the surgeries to her spine and related expenses.[15] Employer responded by filing a Petition for Review on August 18, 2023.[16]  On April 18, 2024, a hearing on the merits was held before the Industrial Accident Board ("Board").[17]  At this hearing, Claimant presented expert testimony from Dr. Eskander and testified on her own behalf.[18]  Employer presented expert testimony from Dr. Rushton, who opined that Claimant had sustained only soft tissue injuries from the February 3, 2022 accident, and that the surgeries were not related to the work injury.[19]  Dr. Rushton further testified that Claimant was able to return to full-duty work as of December 1, 2023, the date of his examination.[20]

On July 10, 2024, the Board issued its decision granting Claimant's petition.[21] The Board found that Dr. Eskander's reference to a February 3, 2023 accident was

---

[14] Opening Br. at 4.

[15] *Id.* at 3; Answering Br. at 4.

[16] *Id.*

[17] *Id.*

[18] Opening Br. at 3–5; Answering Br. at 7, 9–10; IAB Decision 4–10.

[19] Opening Br. at 4; Answering Br. at 9–10; IAB Decision 2–4.

[20] Opening Br. at 8; Answering Br. at 9.

[21] *See* IAB Decision.

5

likely an error in which he misstated the year.[22]  The Board determined that Claimant's surgeries were reasonable, necessary, and causally related to the February 3, 2022 work injury.[23]  However, the Board also concluded that Claimant was no longer totally disabled as of December 31, 2023.[24]

On July 29, 2024, Claimant filed a Motion for Clarification seeking clarity on two issues: (1) how the Board determined that Claimant's disability period ended on December 31, 2023; and (2) how Employer met its burden of proof to show total disability benefits had terminated without producing a labor market survey.[25]  The Board issued its decision on this motion ("IAB Clarification Order") on September 27, 2024, finding that Claimant could remain totally disabled until her doctor stated otherwise.[26]  Employer then appealed challenging both the Board's original decision and its Clarification Order.[27]

---

[22] *Id.* at 11–13.

[23] *Id.* at 13–15.

[24] *Id.* at 15–18.

[25] *See* Opening Br., Ex D at 2 ("IAB Clarification Order"); *see also* Opening Br. at 3–5; Answering Br. at 4–5, 10, 17–18.

[26] *See* IAB Clarification Order.

[27] *See* D.I. 1.

## INDUSTRIAL ACCIDENT BOARD'S OPINIONS

### A. IAB's Decision for Employer's Petition for Review and Claimant's Petition for Additional Compensation

The Board issued its decision on July 10, 2024, finding in favor of Claimant on several grounds. First, the Board determined that Claimant's sole date of injury was February 3, 2022, rejecting Employer's contention that a second accident had occurred on February 3, 2023—exactly one year after.[28] The Board noted that throughout his extensive testimony, Dr. Eskander consistently related all of Claimant's treatments to a single work injury and never mentioned two separate accidents.[29] The Board also found Claimant's testimony credible when she stated that she did not fall on February 3, 2023.[30] The Board concluded that Dr. Eskander's single reference to "a February 3, 2023, accident is a simple error in which he misstated the year of Claimant's accident."[31]

On the issue of medical treatment, the Board found Dr. Eskander's testimony more credible and persuasive than Dr. Rushton's, determining that both the cervical spine surgery performed on May 24, 2023, and the lumbar spine surgery performed

---

[28] IAB Decision at 11–13.

[29] *Id.* at 12–13.

[30] *Id.* at 13.

[31] *Id.*

on October 25, 2023, were causally related to the February 3, 2022 work accident and were both reasonable and necessary.[32]

Regarding Claimant's disability status, the Board determined that Employer had not met its burden of proving that Claimant was physically capable of returning to work full-time without restrictions on December 1, 2023, as Dr. Rushton had opined.[33] Yet the Board concluded that Claimant was capable of returning to work in some capacity as of December 31, 2023, and thus determined that her total disability status ended on that date.[34]

**B. IAB's Order on Claimant's Motion for Clarification**

In the Board's September 27, 2024 Clarification Order, it acknowledged that in deciding Claimant was no longer totally disabled as of December 31, 2023, it "placed more stock in the opinion of Employer's medical witness than Claimant's treating physician on that specific issue."[35] The Board then emphasized that, as of the date of the hearing, Claimant had been instructed by her treating physician not

---

[32] *Id.* at 13–15.

[33] *Id.* at 15–16.

[34] IAB Decision at 16–18.

[35] *See* IAB Clarification Order.

to return to work yet.[36]  The Board ultimately found that under Delaware law, Claimant could remain totally disabled until her doctor stated otherwise.[37]

## STANDARD OF REVIEW

The Court reviews decisions of the Industrial Accident Board only to determine whether the decision of the Board is free from legal error and whether the Board's findings are supported by substantial evidence.[38] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39]  The Court focuses on whether "the evidence is legally adequate to support the Board's factual findings" but the Court's role is not to independently "weigh the evidence, determine credibility questions, or make its own factual findings."[40] And the Court will not disturb a discretionary ruling by the Board unless it is "based on clearly unreasonable or capricious grounds" or abuses its discretion by "exceed[ing] the bounds of reason in view of the circumstances or ignore[ing]

---

[36] *Id.* at 3.

[37] *Id.* at 3–4.

[38] *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016) (quoting *Stanley v. Kraft Foods, Inc.,* 2008 WL 2410212, at *2 (Del. Super. Mar. 24, 2008)).

[39] *Id.* (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[40] *Robinson v. Del. Pro. Servs., Inc.*, 2021 WL 4485017, at *1 (Del. Super. Sept. 30, 2021) (citations omitted).

recognized rules of law so as to produce an injustice."[41] Legal errors are reviewed de novo.[42]

It is essential for the Court to review "the entire record to determine whether, on the basis of all the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[43] The Court "must view the record in the light most favorable to the prevailing party below."[44]

## DISCUSSION

### A. THE IAB'S DECISION ON PETITION FOR REVIEW AND PETITION TO DETERMINE ADDITIONAL COMPENSATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND FREE FROM LEGAL ERROR.

The Employer's first contention on appeal is that the Board erred by finding Claimant's surgeries were causally related to the February 3, 2022 work accident.[45] Specifically, Employer argues the Board impermissibly altered Dr. Eskander's testimony when it concluded that his reference to "2/3 of '23" was a "simple error

---

[41] *Pumphrey v. Allen Harim Foods*, 2019 WL 4034292, at *2 (Del. Super. Aug. 26, 2019) (citations omitted).

[42] *Roos Foods*, 152 A.3d at 118 (citing *Pers.–Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[43] *Fasano v. Delaware Dep't of Nat. Res. & Env't Control*, 2024 WL 469638, at *2 (quoting *Nat'l Cash Register v. Riner*, 424 A. 2d 669, 674–75 (Del. Super. 1980)).

[44] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258–59 (Del. 2013) (citing *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del. 2010) (TABLE)).

[45] Opening Br. at 11–12.

in which he misstated the year."[46]  Accordingly, there was no expert testimony establishing a causal relationship between Claimant's surgeries and the February 3, 2022 work accident, and therefore the Board's decision lacks substantial evidence and constitutes legal error.[47]  The Court disagrees.

The Board "may adopt the opinion testimony of one expert over another; and that opinion, if adopted, will constitute substantial evidence for purposes of appellate review."[48]  Expert medical testimony may also be supplemented by credible lay testimony to constitute substantial evidence.[49]  "[T]he credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine."[50]  "[W]here the record shows conflicting or inconsistent facts, the Board must, with 'explicit detail,' set forth those facts upon which it relied in reaching its decision."[51]

The Board's decision is supported by substantial evidence and free from legal error.  While Dr. Eskander did make one reference to a "2/3 of '23" injury date during

---

[46] *Id.* at 16–20.

[47] *Id.*

[48] *Pers.-Gaines*, 981 A.2d at 1161.

[49] *Wyatt*, 81 A.3d at 1259 (citing *General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).

[50] *Coleman v. Dept. of Labor*, 288 A.2d 285, 287 (Del. Super. 1972).

[51] *Branch v. Chrysler Motors Corp.*, 1996 WL 527283 at *4 (Del. Super. May 20, 1996) (citation omitted).

his deposition, he was describing Claimant's symptoms: "So she is describing pain in the neck, midback, and low back. . . . Again, it began after she *fell at work*. This was on 2/3 of '23."[52]  The totality of his testimony also demonstrates that he consistently related Claimant's injuries and treatment to the *work accident*.  Dr. Eskander specifically confirmed that all of Claimant's treatment, including the surgeries, was reasonable, necessary, and related to her *work injury*.[53]  Of note, when

---

[52] Answering Br. Ex. D ("Eskander Dep.") at 21 (emphasis added).

[53] "Q: And those injection procedures in the neck I just asked you about, those are reasonable and necessary and related to the *work injury*. Correct?  A: Yes, sir."  *Id.* at 18 (emphasis added).

"Q: And that injection to lumbar spine on August 16, 2023, was reasonable, necessary, and related to her *work injury*. Correct? A: Absolutely yes."  *Id.* at 27 (emphasis added).

"Q: Again, all of that's reasonable and necessary and related to her *work injury* for the reasons you already stated. Correct? A: Yes, sir." *Id.* at 28 (emphasis added).

"Q: … What I want to do now is just tie everything together and ask you about -- to confirm the treatment she's had to her neck and back involving physical therapy … obviously surgery and hospital stay, has all been reasonable and necessary and related to her *work injury from February of 2022*.  A: Yes, sir, that's correct." *Id.* at 33 (emphasis added).

"Q: And obviously that's going to need postsurgery physical therapy that's also reasonable and necessary and related to her *work injury*. Correct? A: Exactly." *Id.* at 35 (emphasis added).

"Q: Obviously her inability to work is directly related to her *work injury in February 2022*. Correct? A: Yes. … The *work injury* and the subsequent surgeries, yes."  Eskander Dep. at 37 (emphasis added).

"A: So in Ashley's case, we do have a surgical plan for her structural change to her back, which is a *work injury* …"  *Id.* at 50 (emphasis added).

asked directly about the casual relationship, Dr. Eskander emphasized that Claimant's injuries stemmed from the work accident:

> "[If] you look at the history, prior records, and all the data, there's really no other narrative that supports that this could come from anything but a *work injury*. She's had legitimate treatment from multiple providers. . . . So all in all, I do believe it makes the most sense. I don't know of another compelling story that would -- that would characterize everything as cleanly as this."[54]

Employer argues that Dr. Eskander's statements about operating within a "three-month window" following Claimant's injury necessarily indicate he was referring to a February 2023 injury date, since the May 2023 surgery would have been well outside this window if the injury occurred in February 2022.[55] These statements, however, must be considered with the fact that Dr. Eskander didn't start treating Claimant until May 2023[56] and his overall testimony relating to Claimant's conditions and treatment to the *work accident*. The Board, as the fact finder, was entitled to weigh these seemingly inconsistent statements and determine which to credit.[57]

---

[54] *Id.* at 33–34 (emphasis added).

[55] Opening Br. at 14–16.

[56] *Id.* at 1; Answering Br. at 8; Eskander Dep. at 12.

[57] *Coleman*, 288 A.2d at 287.

The Board also properly considered Claimant's testimony that she did not experience any fall or accident on February 3, 2023.[58] While the Employer correctly notes that lay testimony alone cannot establish medical causation, the Board did not rely solely on Claimant's testimony for this purpose. Rather, the Board may rely on and did consider Claimant's testimony as one factor in evaluating the credibility of expert opinion.

The Court does not embrace Employer's argument that *Turbitt v. Blue Hen Lines* applies here.[59] Indeed, in *Turbitt*, our Supreme Court held that a Board may rely on its own "institutional experience" to evaluate evidence "but not as a source for creating evidence."[60] But the factual circumstances in *Turbitt* are distinguishable from the present case.

In *Turbitt*, the Board was presented with uncontroverted expert medical opinion. Claimant's medical expert provided the only medical testimony concerning the claimant's disability, opining that he had a 34% permanent partial disability.[61] The employer "tendered no medical evidence in support of its position."[62] Despite this lack of contrary evidence, the Board, "relying primarily on its own experience

---

[58] *See Wyatt*, 81 A.3d at 1259 (citing *General Motors Corp.*, 164 A.2d at 688).

[59] Opening Br. at 16–18 (citing *Turbitt v. Blue Hen Lines*, 711 A.2d 1214, 1216 (Del. 1998)).

[60] *Turbitt*, 711 A.2d at 1216.

[61] *Id.* at 1215.

[62] *Id.*

in these matters," concluded that the claimant had only a 15% permanent partial impairment.[63] Our Supreme Court found this improper because the Board had essentially created evidence where none existed, rejecting the only medical opinion in the record based solely on its own institutional experience.[64]

Here, by contrast, the Board did not create evidence but rather evaluated conflicting evidence in the record. The Board had before it testimony from both Dr. Eskander and Dr. Rushton, each offering different interpretations and opinions. Our Supreme Court in *Turbitt* emphasized that "whatever institutional experience or administrative expertise the Board possesses may be used as a tool for evaluating evidence but not as a source for creating evidence."[65] So too here. The Board used its experience as a tool for evaluating the conflicting medical testimony and determining which expert's opinion was more credible, rather than creating evidence where none existed. The Board also explicitly acknowledged the conflicting testimony and provided specific reasons for its credibility determinations. This falls squarely within the Board's authority to "set a permanency rating different from that

---

[63] *Id.*

[64] *Id.* at 1215–16.

[65] *Id.* at 1216.

15

established by a physician, provided that the Board articulates a factual basis for so doing."[66]

The Board's conclusion that Dr. Eskander misstated the year in one instance is a reasonable interpretation of the evidence when his testimony is viewed in its entirety. The Court may not substitute its judgment for that of the Board on issues of witness credibility and resolving conflicts in testimony. Viewing the record in its entirety, the Board's decision on Petition for Review and Petition to Determine Additional Compensation is supported by substantial evidence and free from legal error. Thus, it is **AFFIRMED**.

## B. IAB'S CLARIFICATION ORDER IS FREE FROM LEGAL ERROR.

Employer's second contention on appeal is that the Board erred as a matter of law when, in its Clarification Order, it awarded Claimant ongoing total disability benefits despite having previously found that Claimant's total disability status ended as of December 31, 2023.[67] This argument, too, is unavailing.

In its original decision, the Board found that "the evidence presented supports a conclusion that Claimant was capable of returning to work in some capacity as of December 31, 2023" and that "Claimant is no longer totally disabled as of December

---

[66] *Turbitt*, 711 A.2d at 1215 (citing *Asplundh Tree Expert Co. v. Clark*, 369 A.2d 1084, 1089 (1975)).

[67] Opening Br. at 21.

31, 2023."[68]  In reaching its conclusion, the Board explicitly explained it credited the expert testimony of Dr. Rushton, supplemented by Claimant's testimony on the day of the hearing which stated that her condition was improving as a result of the spinal surgeries.[69]  However, when Claimant filed a Motion for Clarification, the Board reconsidered its determination in light of *Gillard-Belfast v. Wendy's Inc.*, *Delhaize Am., Inc. v. Baker*, and Dr. Eskander's opinion.[70]

In *Gillard-Belfast*,[71] our Supreme Court established that a claimant is entitled to rely on treating physician work restrictions until the doctor releases them, which allows them to continue receiving total disability benefits as long as their treating physician maintains them on total disability status.[72]  Here, Dr. Eskander—Claimant's treating physician—had not released Claimant to return to work at the time of the hearing.[73]  In fact, Dr. Eskander testified Claimant would likely be ready to return to work about six months following her last surgery, which took place on October 25, 2023, and that he had yet to evaluate Claimant's condition.[74]

---

[68] IAB Decision at 17–18.

[69] *Id.* at 17.

[70] IAB Clarification Order at 3–4.

[71] *Gilliard-Belfast v. Wendy's, Inc.*, 754 A.2d 251 (Del. 2000).

[72] *Id.* at 253–54.

[73] IAB Clarification Order at 3; Eskander Dep. at 35–37.

[74] Eskander Dep. at 36.

The Board's Clarification Order recognized this precedent that had not been fully addressed in its original decision.[75] By applying *Gillard-Belfast*, the Board then determined that Claimant was "entitled to rely on her Doctor's temporary total disability instruction at the time of the Hearing."[76] Acknowledging its error, and upon rereviewing the record, the Board found Claimant was in fact still totally disabled. In short, the Board, corrected course.

Employer argues that under *Baker*, the Board's factual finding that Claimant could return to work in some capacity as of December 31, 2023, should terminate her entitlement to total disability benefits regardless of Dr. Eskander's opinion.[77] But this argument misses the mark.

*Baker* did not overrule *Gilliard-Belfast*; rather, it reinforced its application. In *Baker*, our Supreme Court held there is a presumption that a claimant's treating physician acts in good faith:

> "The *Gillard-Belfast* rule applies to any claimant, whether the parties agree that the claimant is disabled or not. Simply stated, if a claimant is instructed by his treating physician that he or she is not to perform *any* work, the claimant will be deemed to be totally disabled during the period of the doctor's order. This rule assumes that the doctor acts in

---

[75] IAB Clarification Order at 4 ("The Board's conclusion otherwise is clarified herein to comport with prevailing case law.").

[76] *Id.* at 4.

[77] Opening Br. at 22 (citing *Delhaize Am., Inc. v. Baker*, 880 A.2d 1047 (Del. 2005) (TABLE)).

18

good faith, and does not extend beyond the time that the Board decides whether the claimant is disabled as a matter of fact."[78]

Here, while the Board initially stated that Claimant was no longer totally disabled as of December 31, 2023, its Clarification Order recognized that by properly applying *Gillard-Belfast*, and the fact that Dr. Eskander, as the treating physician, had not released Claimant to return to work, her total disability status remained.[79] The Board's clarification was a proper application of the legal precedent established by our Supreme Court that had not been fully considered in the Board's initial decision. Put simply, like a Rule 59(e) Reargument Motion, the Board had overlooked precedent that would have a controlling effect, or misapprehended the facts that would affect the outcome of its decision.

Thus, the Board's Clarification Order awarding ongoing total disability benefits was not legal error but a reconsideration and application of Delaware law after properly considering precedent. Thus, it is **AFFIRMED**.

## CONCLUSION

Reviewing the record in its entirety, the Board's findings and decisions are supported by substantial evidence and free from legal error. This Court's role is not

---

[78] *Baker*, 880 A.2d at 1047.

[79] IAB Clarification Order at 3–4.

19

to reweigh evidence or substitute its judgment for the Board's.  Thus, the Board's decision and Clarification Order are **AFFIRMED**.

**IT IS SO ORDERED.**

**/s/ Calvin Scott**
Judge Calvin L. Scott, Jr.
